Alex R. Straus, SBN 321366
alex@gregcolemanlaw.com
**GREG COLEMAN LAW PC**
16748 McCormack Street
Los Angeles, CA 91436
Telephone: (917) 471-1894
Facsimile: (310) 496-3176
*Plaintiffs' Attorneys*
*Additional attorneys on signature page*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| PAUL GIFFORD, MARY LOU MOLINA, RANDY MILAND, KAREN PERRI on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>PETS GLOBAL INC., a California Corporation,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**Demand for Jury Trial** |

Plaintiff Paul Gifford, Mary Lou Molina, Randy Miland, and Karen Perri ("Plaintiffs"), acting on behalf of themselves and all others similarly situated ("Class Members"), bring this action for damages and equitable relief against Pets Global Inc. ("Defendant").

## NATURE OF THE CASE

1.      Pet owners take the health and well-being of their dogs seriously. Accordingly, when purchasing dog foods, an important consideration for many

consumers, including Plaintiffs and Class Members, is the quality of the food that their dogs eat. These consumers are willing to pay more for a top-quality dog food that excludes certain ingredients (often used as cheap fillers) that are suspected to cause allergic reactions or that lead to other health problems in dogs. For example, dogs can—and often do—have allergic reactions to certain foods, including those that contain wheat, soy, and chicken. Although not every dog has an allergic reaction to these ingredients, consumers like Plaintiffs and Class Members choose to pay more upfront than run the risk of harm to their pets and related veterinary treatment.

2.      Plaintiffs and consumers willingly pay a premium for limited ingredient pet foods—like Defendant's Zignature Limited Ingredient Formula, Duck Formula and Zignature Limited Ingredient Formula, Lamb (collectively "Zignature Limited Ingredient Diets")—that purport to be for the health and well-being of their pets.

3.      Consumers, including Plaintiffs, rely on Defendant's representations that the Zignature Limited Ingredient Diets: (1) include only limited ingredients; (2) are specifically formulated for the health needs of dogs; (3) meet its own ingredient promises and warranties; and (4) adhere to quality and manufacturing standards.

## PARTIES

4.      Plaintiff Paul Gifford is a citizen of California residing in Laguna Niguel, Orange County.

5.      Mary Lou Molina is a citizen of California residing in Pinegrove, Amador County.

6.      Plaintiff Randy Miland is a citizen of Minnesota residing in Saint Paul, Ramsey County.

7.      Plaintiff Karen Perri is a citizen of Illinois residing in Sycamore, DeKalb County.

8.      Defendant Pets Global Inc. is a corporation organized and existing under the laws of the State of California with its principal place of business located at 28334 Industry Drive, Valencia, California, 91355. Defendant designs, manufactures,

markets, and sells the Zignature Limited Ingredient Diets online and through third-party retailers throughout the United States.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  There are at least 100 members in the proposed class, the aggregated claims of the individual class members exceed the sum or value of $5,000,000.00 exclusive of interest and costs, and some of the members of the proposed class are citizens of states different from each of the Defendant.

10.     The Court may exercise jurisdiction over Defendant because its principal place of business is located in California and it is registered to conduct business in California.

11.     The Defendant has sufficient minimum contacts with California to be subject to this Court's personal jurisdiction. Defendant is incorporated in California and maintains its principal place of business in California. Further, Defendant intentionally avails itself of the markets within California through the promotion, sale, marketing, and distribution of the Zignature Limited Ingredient Diets and numerous other products, which renders this Court's exercise of jurisdiction necessary and proper.

12.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant's principal place of business is in this district.

## FACTUAL ALLEGATIONS

**Plaintiff Paul Gifford's Facts**

13.     Plaintiff Gifford purchased the Zignature Limited Ingredient Diets bi-monthly from December 2016 until May 2020. Plaintiff Gifford most often purchased the Zignature Limited Ingredient Diets from Horizon Pet Winchester, located at 30688 Benton Road, Winchester, California, 92596.

14.     Paul Gifford purchased the Zignature Limited Ingredient Diets for his Lhasa-Poo, Sir Winston. Plaintiff Gifford wanted high quality, healthy food for his

dog and he believed the Zignature Limited Ingredient Diets met this criteria.At the time of all his purchases, Plaintiff Gifford relied on Defendant's factual representations about the ingredients in the Zignature Limited Ingredient Diets dog food, including those representations on the product label. The representations all indicate that that the Zignature Limited Ingredient Diets are limited ingredient diets that do not contain any grains or chicken.

15.     Had Defendant truthfully disclosed all ingredients on its product labels or otherwise disclosed to Plaintiff Gifford that the Zignature Limited Ingredient Diets contained non-conforming ingredients, he would have not purchased them. If the Limited Ingredient Diets are conformed to their project packaging, Plaintiff Gifford would consider buying them again.

16.     Plaintiff Gifford did not receive the benefit of his bargain when he purchased the Zignature Limited Ingredient Diets products that included ingredients that did not conform to the packaging representations and to the warranties made by Defendant.

**Plaintiff Mary Lou Molina's Facts**

17.     Plaintiff Molina purchased the Zignature Limited Ingredient Diets bi-monthly from late 2015 until mid-2020. Plaintiff Molina most often purchased the Zignature Limited Ingredient Diets PetSmart located at 6434 Sunrise Blvd Citrus Heights, CA, 95610. Occasionally, she would purchase the Zignature Limited Ingredient Diets from a PetSmart located at 10830 Olson Drive, Rancho Cordova, CA, 95670.

18.     Plaintiff Molina purchased the Zignature Limited Ingredient Diets for her dogs, Dinah (mixed breed, 11 years old), Scout (Border Collie, deceased), Katie (Border Colle, deceased), Bear (Chow-chow, deceased), and Harry (German Shepherd, deceased).  Plaintiff Molina wanted high quality, healthy food for her dogs and she believed the Zignature Limited Ingredient Diets met this criteria. At the time of all her purchases, Plaintiff Molina relied on Defendant's factual representations

about the ingredients in the Zignature Limited Ingredient Diets dog food, including those representations on the product label. The representations all indicate that that the Zignature Limited Ingredient Diets are limited ingredient diets that do not contain any grains or chicken.

19.    Had Defendant truthfully disclosed all ingredients on its product labels or otherwise disclosed to Plaintiff Molina that the Zignature Limited Ingredient Diets contained non-conforming ingredients, she would have not purchased them. If the Limited Ingredient Diets are conformed to their project packaging, Plaintiff Molina would consider buying them again.

20.    Plaintiff Molina did not receive the benefit of her bargain when she purchased the Zignature Limited Ingredient Diets products that included ingredients that did not conform to the packaging representations and to the warranties made by Defendant.

**Plaintiff Randy Miland's Facts**

21.    Plaintiff Miland purchased the Zignature Limited Ingredient Diets bi-monthly from March 2017 until October 2020 for his beagle, Kirby. Plaintiff most often purchased the Zignature Limited Ingredient Diets from Chuck & Don's Pet Food & Supplies, located at 893 Village Center Drive, North Oaks, Minnesota, 55127. Occasionally, he purchased the Zignature Limited Ingredient Diets from a Chuck & Don's Pet Food & Supplies located at 265 Radio Dr Ste G, Woodbury, Minnesota, 55125.

22.    Plaintiff Miland purchased the Zignature Limited Ingredient Diets because Kirby had sensitivities to grain and the product labeled mentioned the Zignature Limited Ingredient Diets were grain free and chicken free.

23.    At the time of all his purchases, Plaintiff relied on Defendant's factual representations about the ingredients in the Zignature Limited Ingredient Diets dog food, including those representations on the product label. The representations all

indicate that that the Zignature Limited Ingredient Diets are limited ingredient diets that do not contain any grains or chicken.

24.     Plaintiff Miland stopped purchasing the Zignature Limited Ingredient Diets because Kirby passed away unexpectedly in October 2020. His cause of death is unknown. Had Defendant truthfully disclosed all ingredients on its product labels or otherwise disclosed to Plaintiff Miland that the Zignature Limited Ingredient Diets contained non-conforming ingredients, he would have not purchased them.

25.     Plaintiff Miland would be willing to purchase the Limited Ingredient Diets again he got another dog, which he is considering doing in the future. The loss of his dog was very recent.

26.     Plaintiff Miland did not receive the benefit of his bargain when he purchased the Zignature Limited Ingredient Diets products that included ingredients that did not conform to the packaging representations and to the warranties made by Defendant.

**Plaintiff Karen Perri's Facts**

27.     Plaintiff Karen Perri purchased the Zignature Limited Ingredient Diets once every two months from approximately December 2018 until early 2020. Plaintiff Perri most often purchased the Zignature Limited Ingredient Diets PetSmart located at 6655 W Grand Ave, Chicago, IL, 60707. Specifically, Plaintiff always purchased the Zignature Limited Ingredient Formula, Lamb.

28.     Plaintiff Perri purchased the Zignature Limited Ingredient Diets for her Shitzu, Trixy (7 years old) as she wanted healthy food for her dog and she believed the Zignature Limited Ingredient Diets met this criteria. At the time of all her purchases, Plaintiff Perri relied on Defendant's factual representations about the ingredients in the Zignature Limited Ingredient Diets dog food, including those representations on the product label. The representations all indicate that that the Zignature Limited Ingredient Diets are limited ingredient diets that do not contain any grains or chicken.

29.     Had Defendant truthfully disclosed all ingredients on its product labels or otherwise disclosed to Plaintiff Perri that the Zignature Limited Ingredient Diets contained non-conforming ingredients, she would have not purchased them. If the Limited Ingredient Diets are conformed to their project packaging, Plaintiff Perri would consider buying them again.

30.     Plaintiff Perri did not receive the benefit of her bargain when she purchased the Zignature Limited Ingredient Diets products that included ingredients that did not conform to the packaging representations and to the warranties made by Defendant.

**Academic Research Regarding the Pet Food Industry**

31.     Before December 2014, little or no peer-reviewed academic research was published concerning the accuracy of label claims with respect to the ingredients present in dog foods.

32.     In December 2014, a study conducted by Ming-Kun Hsieh, *et al*. ("Hsieh Study"), determined that only 18% of the dog food samples they tested completely matched the label claims regarding the content of animal by-products. In other words, 82% of the products analyzed by the researchers contained non-conforming ingredients when compared to their label claims. The December 2014 Hsieh Study hypothesized that raw materials used in the preparation of the canned dog food products contained multiple protein types and may have contributed to contamination.[1]

33.     In 2016, another study, conducted by Kayo Kanakubo, *et al*. ("Kanakubo Study"), looked into the issue of whether vegan pet food contained non-conforming

---

[1] *See* Ming-Kun Hsieh, *et al.*, *Detection of undeclared animal by-products in commercial canine canned foods: Comparative analyses by ELISA and PCR-RFLP coupled with slab gel electrophoresis or capillary gel electrophoresis*, J Sci Food Agric. 2016 Mar 30; 96(5): 1659-65 (completed December 31, 2014).

mammalian ingredients.[2] Vegan pet foods should contain no mammalian proteins or ingredients. However, the Kanakubo Study found that half of the pet foods tested contained non-conforming mammalian DNA and suggested that manufacturers are ultimately responsible for maintaining adequate end product quality control to prevent such discrepancies between their ingredients and label claims.

34.     By 2018, research into pet food products' label claims and the presence of non-conforming ingredients intensified. Out of the 40 products analyzed in the study conducted by Rebecca Ricci, *et al.* ("Ricci Study"), the ingredients of only 10 products correctly matched their labels.[3] Of the remaining 30 products, 5 did not contain the declared animal species as ingredients and 23 others revealed the presence of undeclared animal species. Two of the products' labels were vague and their accuracy was indeterminable. According to the Ricci Study, mislabeling is an especially widespread problem in pet foods used for "elimination diets" (i.e., used to investigate food allergies). The Ricci Study researchers went on to suggest that manufacturers should pay particular attention to both, the selection of raw material suppliers and the production processes for pet food, due to the high risk of contamination.

35.     A second 2018 study (conducted in Europe) by Elena Pagani, *et al.* ("Pagani Study"), tested 11 canine and feline limited ingredient wet food products and found the presence of non-conforming ingredients in 54% of the products.[4] The Pagani Study also referenced the fact that other peer-reviewed studies have found that 80%

[2] *See* K. Kanakubo, *et al.*, *Determination of mammalian deoxyribonucleic acid (DNA) in commercial vegetarian and vegan diets for dogs and cats*, Journal of Animal Physiology & Animal Nutrition, 2017 Feb; 101 (1): 70–74 (March 3, 2016).

[3] *See* Rebecca Ricci, *et al.*, *Undeclared animal species in dry and wet novel and hydrolyzed protein diets for dogs and cats detected by microarray analysis,* BMC Veterinary Research Volume 14, Article number: 209 (2018).

[4] *See* Elena Pagani, *et al.*, *Cross-contamination in canine and feline dietetic limited-antigen wet diets*, BMC Vet Res. 2018; 14: 283 (September 12, 2018).

of the dry foods analyzed contained non-conforming products. The Pagani Study researchers suggest that the high rate of cross-contamination in dietic limited-antigen wet canine and feline foods may be due to inadequate quality-control practices in the pet food industry, and opine that the pet food industry has a legal obligation to produce safe food for consumers. Further, the Pagani Study researchers hypothesize that pet food contamination occurs at two different points during manufacturing: 1) in the production of the feed materials (sometimes attributable to suppliers), and 2) during the actual production of the pet food via cross-contamination during manufacturing production lines, improper equipment cleaning, or other production deficiencies.

36.    In 2018, a third study conducted by Thierry Olivry, *et al.* ("Olivry Study"), summarized 18 studies, articles, and an abstract published between July 2017 and January 2018 related to pet food ingredient testing. The Olivry Study researchers concluded that the mislabeling of pet food appears rather "common" in limited ingredient diet products that are proposed for elimination diets.[5] They also found that unexpected added ingredients are more frequently detected than those missing from the label.

37.    In sum, since 2014, virtually all scholarly researchers have determined that pet food, including dog food in particular, sold to consumers frequently contains non-conforming ingredients, and that significant discrepancies between the products' labeling and their actual ingredients appears to be commonplace among pet food manufacturers.

**Defendant's Material Misrepresentations**

38.    Pet foods vary in their quality of ingredients, formula, manufacturing processes, and inspection quality. Pet owners who purchase "grain free" and "limited ingredient" products pay a premium in order to alleviate their pets' allergies or to

---

[5] *See* Thierry Olivry and Ralf S. Mueller, *Critically Appraised topic on adverse food reactions of companion animals (5): discrepancies between ingredients and labeling in commercial pet foods*, BMC Vet Res. 2018 Jan 22; 14(1):24 (January 22, 2018).

provide various health benefits associated with a grain free or limited ingredient diet. Notably, food allergies are more common among certain dog breeds than others. In addition, pet owners are willing to pay a premium for dog food with premium ingredients and expect the products that are advertised in this manner to conform to the ingredients listed on the packaging.

39.     Accordingly, Defendant's misrepresentations regarding the ingredients in the Zignature Limited Ingredient Diets are material to consumers who purchase this product, passing over products that cost less but do not claim to be made from select, premium ingredients.

40.     Inclusion of the phrases "the Zignature Limited Ingredient Diets" and "Limited Ingredient" in the product name for the Zignature Limited Ingredient Diets dog food line is intended to appeal specifically to dog owners who would like to reduce the risk of allergic reactions to their pet's food, or otherwise to protect or improve their pets' overall health.  In addition, "limited ingredient" diets are often recommended by veterinarians to reduce risks of adverse reactions of dogs to certain ingredients that are frequently used as fillers in lower-priced dog foods, including grains, soy, or lower-priced meats.

41.     The front and back of the Zignature Limited Ingredient Diets dog food bags include numerous representations by Defendant that are materially misleading. Images of the front and back of the bags of a few of the Zignature Limited Ingredient Diets products are included below:

**I.**     **<u>Zignature Limited Ingredient Diet, Duck Formula</u>**







1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INGREDIENTS

Duck, Duck Meal, Chickpeas, Peas, Sunflower Oil (Preserved with Citric Acid), Flaxseed, Dehydrated Alfalfa Meal, Natural Flavors, Salt, Choline Chloride, Vitamins (Vitamin A Acetate, Vitamin D3 Supplement, Vitamin E Supplement, Niacin, D-Calcium Pantothenate, Thiamine Mononitrate, Pyridoxine Hydro-chloride, Riboflavin Supplement, Folic Acid, Biotin, Vitamin B 12 Supplement), DHA, Taurine, Minerals (Zinc Proteinate, Iron Proteinate, Copper Proteinate, Cobalt Proteinate, Manganese Proteinate, Calcium Iodate, Sodium Selenite), Potassium Chloride, Calcium Carbonate, Mixed Tocopherols Preserved, L-Carnitine.

**AAFCO NUTRITIONAL ADEQUACY STATEMENT**

Zignature® Duck Formula has been formulated to meet the nutritional levels established by the AAFCO Dog Food Nutrient Profiles for all life stages including the growth of large size dogs (70 lbs. or more as an adult).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.   <u>Zignature Limited Ingredient Diet, Lamb Formula</u>













42.     The representations that the Zignature Limited Ingredients are a "Limited Ingredient Diet" dog food appears in large type on the front and back of every bag. Further, the ingredients are listed on both the front and back of the bag. The product further includes representations, on the side and back of the bag, that it is a "Chicken Free Product" and is "Potato & Grain Free."

43.     The back of each bag also includes an ingredient list for the Zignature Limited Ingredient Diets. For example, chicken and wheat are not listed as ingredients on the Zignature Limited Ingredient Diets' ingredient lists.

44.     All of Defendant's representations regarding the ingredients in the Zignature Limited Ingredient Diets, and the safety of the Zignature Limited Ingredient Diets for dogs that may be sensitive or allergic to wheat or chicken, are false.

45.     In fact, the Zignature Limited Ingredient Diets contain significant amounts of wheat and chicken (the "defect"), thereby making Defendant's representations that the Zignature Limited Ingredient Diets products are "grain-free" or "chicken-free" products demonstrably false. Plaintiff' independent analysis of the ingredients of the Zignature Limited Ingredient Diets found that the Zignature Limited Ingredient Diets contain material amounts—that is, amounts above a trace amount by any scientific metric—of chicken and wheat using the industry standard Q-PCR method of DNA testing.

46.     Specifically, Plaintiffs' testing found amounts of chicken and wheat within Zignature Limited Ingredient Diets that is well above amounts that would be considered cross contamination. The non-conforming ingredients found within the Zignature Limited Ingredient Diets are material to Plaintiff, customers, and potential class members.

47.     It is undisputed the Q-PCR method of DNA testing is the industry standard method of testing used to determine whether food complies with FDA standards and other quality standards.

**Defendant's Misrepresentations and Omissions are Material to Reasonable Consumers**

48.   Although pet foods vary in the quality of ingredients, formula, manufacturing processes, and inspection quality, dog owners often choose to purchase products that have "limited ingredients"—like grain-free or chicken-free here—because certain dog breeds have allergies associated with dog foods that contain these ingredients or because the owners understand that certain ingredients help (or hamper) their pets' health, weight, and overall well-being.

49.   In addition, it is reasonable for a consumer to assume when a product states a finite number of ingredients are within a product that additional ingredients, which are not disclosed on the label, are not present. Defendant knows this, and that is why on each Zignature Limited Ingredient Diet it specifically lists out the complete and total number of ingredients per bag. And by listing its ingredients in this manner, Zignature is able to profit off its misrepresentations.

50.   When pet owners buy limited ingredient dog food, they usually do so to prevent a health issue or address a nutritional deficiency that their dog may be experiencing. And consumers generally must pay a premium price for these specialized pet food formulations.

51.   Accordingly, Plaintiffs and Class Members purchased the Zignature Limited Ingredient Diets, spending additional money for the premium food and its promises, instead of cheaper dog food alternatives that are known to contain wheat and/or chicken.

52.   Defendant's misrepresentations about the formulation of the Zignature Limited Ingredient Diets drive consumers' purchases.

## CLASS ACTION ALLEGATIONS

**Class Definitions**

53.   Plaintiffs Gifford, Molina, Miland, and Perri bring this action on behalf of themselves and the members of the following class:

> All persons residing in the United States and its territories who, during the maximum period of time permitted by law, purchased the Zignature Limited Ingredient Diets primarily for personal, family, or household purposes, and not for resale.

54.    In addition, or alternatively, Plaintiff Gifford and Plaintiff Molina bring this action on behalf of themselves and the members of the following subclass ("California Subclass"):

> All persons residing in California who, during the maximum period of time permitted by law, purchased the Zignature Limited Ingredient Diets primarily for personal, family, or household purposes, and not for resale.

55.    In addition, or alternatively, Plaintiff Miland brings this action on behalf of himself and the members of the following subclass ("Minnesota Subclass"):

> All persons residing in Minnesota who, during the maximum period of time permitted by law, purchased the Zignature Limited Ingredient Diets primarily for personal, family, or household purposes, and not for resale.

56.    In addition, or alternatively, Plaintiff Perri brings this action on behalf of herself and the members of the following subclass ("Illinois Subclass"):

> All persons residing in Illinois who, during the maximum period of time permitted by law, purchased the Zignature Limited Ingredient Diets primarily for personal, family, or household purposes, and not for resale.

57.    Specifically excluded from this definition are: (1) Defendant, any entity in which any Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case

is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel.

58.     Plaintiffs reserve the right to amend the Class definition and Subclass definitions as necessary.

59.     As used herein, "Class Members" shall mean and refer to the members of the Nationwide Class and any of the Subclasses, including Plaintiffs.

60.     Plaintiffs seek damages and equitable relief on behalf of themselves and the Class Members.  Plaintiffs disclaim any intent or right to seek any recovery in this action for personal injuries, wrongful death, or emotional distress suffered by Plaintiffs and/or the Class Members.

61.     Numerosity: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.

62.     Typicality: The claims of the representative Plaintiffs are typical in that Plaintiffs, like all Class Members, purchased the Zignature Limited Ingredient Diets that were manufactured and distributed by Defendant. Plaintiffs, like all Class Members, have been damaged by Defendant's misconduct in that, *inter alia*, they have incurred or will continue to incur damage due to purchasing a product at a premium price that contained ingredients (grains and chicken) that Defendant represented were absent from the Zignature Limited Ingredient Diets. Furthermore, the factual bases of Defendant's misconduct are common to all Class Members and represent a common thread of fraudulent, deliberate, and negligent misconduct resulting in injury to all Class Members.

63.     Commonality: There are numerous questions of law and fact common to Plaintiffs and Class Members that predominate over any individual questions.  These common legal and factual issues include the following:

a)    Whether the Zignature Limited Ingredient Diets contain grains and/or chicken;

b)    Whether Defendant's representations that its products contain no grains or chicken are false;

c)    Whether Defendant expressly warranted that the Zignature Limited Ingredient Diets would conform to the representations made on its packaging that the Zignature Limited Ingredient Diets contain no grains or chicken;

d)    Whether Defendant impliedly warranted that the Zignature Limited Ingredient Diets would conform to the representations that they are limited ingredient products that would pass without objection in the trade under this description and are fit for the ordinary purposes for which such goods are sold;

e)    Whether Defendant breached its warranties by making the representations above;

f)    Whether Defendant was unjustly enriched by making the representations and omissions above;

g)    Whether Defendant's actions as described above violated state consumer protection laws as alleged herein;

h)    Whether Defendant should be required to make restitution, disgorge profits, reimburse losses, pay damages, and pay treble damages as a result of the above-described practices.

64.    Adequate Representation: Plaintiffs will fairly and adequately protect the interests of Class Members. Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

65.    Predominance and Superiority: Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's

unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

66.    Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## COUNT 1
## BREACH OF EXPRESS WARRANTY
### (Under California Law)

67.    Plaintiffs Gifford and Molina bring this count on behalf of themselves and the California Subclass and repeats and re-allege all previous paragraphs, as if fully included herein.

68.    Defendant marketed, sold, and/or distributed the Zignature Limited Ingredient Diets, and Plaintiffs Gifford and Molina and the California Subclass purchased the Zignature Limited Ingredient Diets.

69.    Defendant represented in its marketing, advertising, and promotion of the Zignature Limited Ingredient Diets that its product was "Grain Free" and a "Chicken Free Product," Defendant made these representations to induce Plaintiffs and the California Subclass to purchase the Zignature Limited Ingredient Diets, which did in fact induce Plaintiffs and the California Subclass to purchase this product.

70.    Accordingly, Defendant's representations that the Zignature Limited Ingredient Diets contained no grain or chicken became part of the basis of the bargain between Defendant and Plaintiffs Gifford and Molina, the California Subclass, and other Class Members.

71.    The Zignature Limited Ingredient Diets did not conform to Defendant's representations and warranties regarding grain and chicken because at all relevant times the bags of the Zignature Limited Ingredient Diets contained these ingredients.

72.    As a direct and proximate result of Defendant's breaches of its express warranties and their failure to conform to the Zignature Limited Ingredient Diets' express representations, Plaintiffs and members of the Class have been damaged. Plaintiffs and Class Members have suffered damages in that they did not receive the product they specifically paid for and that Defendant warranted it to be. In addition, Plaintiffs and Class Members paid a premium for a product that did not conform to the Defendant's warranties.

73.    As of the date of this filing, Plaintiffs mailed a letter to Defendant outlining Defendant's conduct that is a breach of the express warranty of the Zignature Limited Ingredient Diets as described throughout this complaint.

## COUNT 2
## BREACH OF EXPRESS WARRANTY
### (Under Minnesota Law and Illinois Law)

74.    Plaintiff Miland and Plaintiff Perri bring this count on behalf of themselves and the Minnesota Subclass and Illinois Subclass respectively, and repeat and re-allege all previous paragraphs, as if fully included herein.

75.    Defendant marketed, sold, and/or distributed the Zignature Limited Ingredient Diets, and Plaintiffs and Subclass Members purchased the Zignature Limited Ingredient Diets.

76.    Defendant represented in its marketing, advertising, and promotion of the Zignature Limited Ingredient Diets that its product was "Grain Free" and a "Chicken

Free Product," Defendant made these representations to induce Plaintiffs and Subclass Members to purchase the Zignature Limited Ingredient Diets, which did in fact induce Plaintiffs and Subclass Members to purchase this product.

77.     Accordingly, Defendant's representations that the Zignature Limited Ingredient Diets contained no grain or chicken became part of the basis of the bargain between Defendant and Plaintiffs and Subclass Members.

78.     The Zignature Limited Ingredient Diets did not conform to Defendant's representations and warranties regarding grain and chicken because at all relevant times the bags of the Zignature Limited Ingredient Diets contained these ingredients.

79.     As a direct and proximate result of Defendant's breaches of its express warranties and their failure to conform to the Zignature Limited Ingredient Diets' express representations, Plaintiffs and Subclass Members have been damaged. Plaintiffs and Subclass Members have suffered damages in that they did not receive the product they specifically paid for and that Defendant warranted it to be. In addition, Plaintiffs and Subclass Members paid a premium for a product that did not conform to the Defendant's warranties.

80.     As of the date of this filing, Plaintiffs and Subclass Members mailed a letter to Defendant outlining Defendant's conduct that is a breach of the express warranty of the Zignature Limited Ingredient Diets as described throughout this complaint.

## COUNT 3
## BREACH OF IMPLIED WARRANTY
### (Under California Law)

81.     Plaintiff Gifford and Plaintiff Molina bring this count on behalf of themselves and the California Subclass and repeats and re-alleges all previous paragraphs, as if fully included herein.

82.     Defendant marketed, sold, and/or distributed the Zignature Limited Ingredient Diets, and Plaintiffs and other Class Members purchased the Zignature Limited Ingredient Diets.

83.     Plaintiff Gifford, Plaintiff Molina, and the California Subclass bring this claim for breach of the Uniform Commercial Code's implied warranty of merchantability on behalf of themselves and other consumers who purchased the Zignature Limited Ingredient Diets as a limited ingredient dog food product for their pets.

84.     The Defendant is a merchant as defined by applicable UCC provisions.

85.     Privity between Plaintiff Gifford, Plaintiff Molina, and the California Subclass and the class and Defendant is not required under California law.

86.     The Defendant has breached the implied warranties of merchantability that it made to Plaintiff Gifford, Plaintiff Molina, and the California Subclass and the prospective class. For example, Defendant impliedly warranted that the Zignature Limited Ingredient Diets products were free from defects, that they were merchantable, and that they were fit for the ordinary purpose for which limited ingredient dog foods are used.

87.     When sold by Defendant, the Zignature Limited Ingredient Diets were not merchantable, did not pass without objection in the trade as a limited ingredient diet for dogs, was not of adequate quality within that description, was not fit for the ordinary purposes for which such goods are used, and did not conform to the promises or affirmations of fact made on the container or label.

88.     On March, 8, 2021, Plaintiff Gifford, Plaintiff Molina, and the California Subclass gave notice to Defendant that the product was not fit for such purpose and/or was not otherwise merchantable as set forth above.

89.     As a direct result of the Zignature Limited Ingredient Diets being unfit for its intended purpose as a limited ingredient food product and/or otherwise not merchantable, Plaintiff Gifford, Plaintiff Molina, and the California Subclass were damaged and are entitled to remedies provided under Article 2 of the U.C.C., including under California law specifically, monetary damages. See, e.g., Cal. Com. Code § 2714.

90.     Because of the defects in the Zignature Limited Ingredient Diets product as described herein, the value of the Zignature Limited Ingredient Diets products as warranted is greater than actual value of the Zignature Limited Ingredient Diets. Plaintiff Gifford, Plaintiff Molina, and the California Subclass would not have purchased the Zignature Limited Ingredient Diets on the same terms, had they known that the Zignature Limited Ingredient Diets in fact contained wheat and/or chicken. Plaintiff Gifford, Plaintiff Molina, and the California Subclass and the Class paid a price premium for the Zignature Limited Ingredient Diets based on Defendant's misrepresentations. Damages, which may be measured pursuant to the damage provisions of Article 2 of the U.C.C., are warranted to plaintiffs and members of the proposed class. See, e.g., Cal. Com. Code § 2714(2).

91.     As a direct and proximate result of Defendant's breach of the warranties of merchantability, Plaintiff Gifford, Plaintiff Molina, and the California Subclass and the other class members have been damaged in an amount to be proven at trial.

## COUNT 4

## BREACH OF IMPLIED WARRANTY

### (Under Minnesota Law)

92.     Plaintiffs Miland brings this claim on behalf of the Class, and alternatively, the Minnesota Subclass, and repeat and re-allege all previous paragraphs, as if fully included herein.

93.     Defendant marketed, sold, and/or distributed the Zignature Limited Ingredient Diets, and Plaintiff Miland and other Class Members purchased the Zignature Limited Ingredient Diets.

94.     Plaintiff Miland and Minnesota Subclass bring this claim for breach of implied warranty of merchantability on behalf of themselves and other consumers who purchased the Zignature Limited Ingredient Diets as a limited ingredient dog food product for their pets.

95.     The Defendant is a merchant as defined by Minn. Stat. § 336.2-104(1).

96.     The Limited Ingredient Diets are and were at all relevant times "goods" within the meaning of Minn. Stat. §§ 336.2-105(1) and 336.2A-103(1)(h).

97.     A warranty that the Limited Ingredient Diets were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Minn. Stat. §§ 336.2 314 and 336.2A-212.

98.     The Defendant has breached the implied warranties of merchantability that it made to Plaintiff Miland and Minnesota Subclass.

99.     When sold by Defendant, the Zignature Limited Ingredient Diets were not merchantable, did not pass without objection in the trade as a limited ingredient diet for dogs, was not of adequate quality within that description, was not fit for the ordinary purposes for which such goods are used, and did not conform to the promises or affirmations of fact made on the container or label.

100.    On March 8, Plaintiff Miland gave notice to Defendant that the product was not fit for such purpose and/or was not otherwise merchantable as set forth above.

101.    As a direct result of the Zignature Limited Ingredient Diets being unfit for its intended purpose as a limited ingredient food product and/or otherwise not merchantable, Plaintiff Miland and class members were damaged in an amount to be proven at trial.

**COUNT 5**

**<u>BREACH OF IMPLIED WARRANTY</u>**

**(Under Illinois Law)**

102.    Plaintiff Karen Perri brings this claim on behalf of the Class, and alternatively, the Illinois Subclass, and repeat and re-allege all previous paragraphs, as if fully included herein.

103.    Defendant marketed, sold, and/or distributed the Zignature Limited Ingredient Diets, and Plaintiff Perri and other Class Members purchased the Zignature Limited Ingredient Diets.

104.    Plaintiff Perri and the Illinois Subclass bring this claim for breach of implied warranty of merchantability on behalf of themselves and other consumers

who purchased the Zignature Limited Ingredient Diets as a limited ingredient dog food product for their pets.

105.   The Defendant is a merchant as defined by 810 Ill. Comp. Stat. §§ 5/2-104(1) and 5/2A-103(3).

106.   The Limited Ingredient Diets are and were at all relevant times "goods" within the meaning of 810 Ill. Comp. Stat. §§ 5/2-105(1) and 5/2A-103(1)(h).

107.   A warranty that the Limited Ingredient Diets were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to 810 Ill. Comp. Stat. §§ 28-2-314 and 28-12-212.

108.   The Defendant has breached the implied warranties of merchantability that it made to Plaintiff Perri and the Illinois Subclass.

109.   When sold by Defendant, the Zignature Limited Ingredient Diets were not merchantable, did not pass without objection in the trade as a limited ingredient diet for dogs, was not of adequate quality within that description, was not fit for the ordinary purposes for which such goods are used, and did not conform to the promises or affirmations of fact made on the container or label.

110.   On March 8, Plaintiff Perri gave notice to Defendant that the product was not fit for such purpose and/or was not otherwise merchantable as set forth above.

111.   As a direct result of the Zignature Limited Ingredient Diets being unfit for its intended purpose as a limited ingredient food product and/or otherwise not merchantable, Plaintiff Perri and class members were damaged in an amount to be proven at trial.

## COUNT 6
## UNJUST ENRICHMENT

112.   Plaintiffs bring this count on behalf of themselves and the Class, and alternatively, the Subclasses, and repeats and re-alleges all previous paragraphs, as if fully included herein.

113.   Plaintiffs conferred benefits on Defendant by purchasing the Zignature Limited Ingredient Diets at a premium price.

114.   Defendant has knowledge of its receipt of such benefits.

115.   Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs and Class Members' purchases of the Zignature Limited Ingredient Diets.

116.   Defendant's retaining of these moneys under these circumstances is unjust and inequitable because Defendant falsely and misleadingly represented that Zignature Limited Ingredient Diets contained no grain or chicken when, in fact, the Zignature Limited Ingredient Diets did contain these non-conforming ingredients.

117.   Defendant's misrepresentations have injured Plaintiffs and Class Members because they would not have purchased (or would not have paid a price premium) for the Zignature Limited Ingredient Diets had they known the true facts regarding the Zignature Limited Ingredient Diets' ingredients.

118.   Because it is unjust and inequitable for Defendant to retain such non-gratuitous benefits conferred on it by Plaintiff and Class Members, Defendant must pay restitution to Plaintiffs and Class Members, as ordered by the Court.

## COUNT 7

## CALIFORNIA CONSUMERS LEGAL REMEDIES ACT ("CLRA")

### (Cal. Civ. Code § 1750, *et seq.*)

119.   Plaintiff Gifford and Plaintiff Molina brings this count on behalf of themselves and the California Subclass and repeats and re-alleges all previous paragraphs, as if fully included herein.

120.   The CLRA prohibits deceptive practices by any business that provides goods, property, or services primarily for personal, family, or household purposes.

121.   Plaintiff Gifford, Plaintiff Molina, and California Subclass Members are "consumers" as defined in California Civil Code § 1761(d).

122.   The Zignature Limited Ingredient Diets Products are "goods" as defined in California Civil Code § 1761(a).

123.   Defendant is a "person" as defined in California Civil Code § 1761(c).

124.   Plaintiff Gifford, Plaintiff Molina, and California Subclass Members' purchases of the Zignature Limited Ingredient Diets are "transactions" as defined in California Civil Code § 1761(e).

125.   Defendant's representations and omissions concerning the quality, benefits and effectiveness of the Zignature Limited Ingredient were false and/or misleading as alleged herein.

126.   Defendant's false or misleading representations and omissions were such that a reasonable consumer would attach importance to them in determining his or her purchasing decision.

127.   Defendant's false and misleading representations and omissions were made to the entire Class as they were prominently displayed on the packaging of every bag of the Zignature Limited Ingredient Diets dog food.

128.   Defendant knew or should have known their representations and omissions were material and were likely to mislead consumers, including Plaintiff Gifford, Plaintiff Molina, and California Subclass Members.

129.   Defendant's practices, acts, and course of conduct in marketing and selling the Zignature Limited Ingredient Diets were and are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment.

130.   Defendant's false and misleading representations and omissions were designed to, and did, induce the purchase and use of the Zignature Limited Ingredient Diets Products for personal, family, or household purposes by Plaintiff Gifford, Plaintiff Molina, and California Subclass Members, and violated and continue to violate the following sections of the CLRA:

a.  Cal. Civ. Code § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

b.  Cal. Civ. Code § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

c.  Cal. Civ. Code § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

d.  Cal. Civ. Code § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it was not.

131.  Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised the Zignature Limited Ingredient Diets to unwary consumers.

132.  Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

133.  Defendant's wrongful business practices were a direct and proximate cause of actual harm to Plaintiff Gifford, Plaintiff Molina, and California Subclass Members.

134.  Pursuant to the provisions of Cal. Civ. Code § 1782(a), March 9, 2021, Plaintiff Gifford, Plaintiff Molina, and California Subclass Members sent the required notice to Defendant regarding its unlawful conduct and violation of the CLRA. Plaintiffs have not received a response yet. After 30 days, Plaintiffs will seek to amend their complaint to add a claim for damages under the CLRA.

135.  Pursuant to California Civil Code § 1780, Plaintiff Gifford and Plaintiff Molina seek injunctive relief, reasonable attorneys' fees and costs, and any other relief that the Court deems proper on behalf of the Class.

## COUNT 8
## CALIFORNIA FALSE ADVERTISING LAW ("FAL")
### (Cal. Bus. & Prof. Code § 17500, *et seq.*)

136.   Plaintiff Gifford and Plaintiff Molina brings this count on behalf of themselves and the California Subclass and repeats and re-alleges all previous paragraphs, as if fully included herein.

137.   The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

138.   It also is unlawful under the FAL to make or disseminate any advertisement that is "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

139.   As alleged herein, the advertisements, labeling, website, policies, acts, and practices of Defendant relating to the Zignature Limited Ingredient Diets were and are deceptive and misleading.

140.   As alleged herein, the advertisements, labeling, website, policies, acts, and practices of Defendant misled consumers acting reasonably as to Defendant's representations about quality, benefits, and ingredients of the Zignature Limited Ingredient Diets.

141.   Plaintiff Gifford and Plaintiff Molina suffered injuries-in-fact as a result of Defendant's actions as set forth herein because, as a reasonable consumer, he purchased the Zignature Limited Ingredient Diets in reliance on Defendant's false and misleading labeling claims concerning the Zignature Limited Ingredient Diets' qualities, benefits, and ingredients.

142.   Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised the Zignature Limited Ingredient Diets in a manner that is untrue and misleading, which Defendant knew or reasonably should have known was untrue, and because Defendant omitted material information from its advertising.

143.   Defendant profited from sale of the falsely and deceptively advertised Products to reasonable but unwary consumers including Plaintiff Gifford and the California Subclass and Defendant has thereby been unjustly enriched.

144.   As a result, Plaintiff Gifford, Plaintiff Molina, and California Subclass Members, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

145.   Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff Gifford and Plaintiff Molina, on behalf of themselves and the California Subclass, seek an order enjoining Defendant from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

## COUNT 9

## CALIFORNIA UNFAIR COMPETITION LAW ("UCL")

### (Cal Bus. & Prof. Code § 17200, *et seq.*)

146.   Plaintiff Gifford and Plaintiff Molina bring this count on behalf of themselves and the California Subclass and repeats and re-alleges all previous paragraphs, as if fully included herein.

147.   The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Defendant's acts, omissions, misrepresentations, practices, and non-disclosures as alleged herein constitute business acts and practices.

148.   Defendant's acts, omissions, misrepresentations, practices and non-disclosures as alleged herein constitute unlawful, unfair, and fraudulent business practices in that they have the capacity to deceive reasonable consumers, including Plaintiff Gifford, Plaintiff Molina, and California Subclass, as to the benefits and ingredients of the Zignature Limited Ingredient Diets Products.

149.  Unlawful: The acts alleged herein are "unlawful" under the UCL in that they violate at least: (a) the False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*; and (b) the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.

150.  Unfair: Defendant's conduct with respect to the labeling, advertising, and sale of the Zignature Limited Ingredient Diets was "unfair" because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to its victims, including Plaintiff Gifford, Plaintiff Molina, and California Subclass.

    a.  Defendant's conduct with respect to the labeling, advertising, and sale of the Zignature Limited Ingredient Diets was and is unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the applicable sections of the False Advertising Law and Consumers Legal Remedies Act.

    b.  Defendant's conduct with respect to the labeling, advertising, and sale of the Zignature Limited Ingredient Diets was and is unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumer themselves could reasonably have avoided.

    c.  Reasonable consumers, including Plaintiffs Gifford and Molina and the California Subclass, purchased the Zignature Limited Ingredient Diets believing the products' ingredients were limited and did not include chicken and wheat as represented by Defendant when in fact they were not—a fact of which consumers could not reasonably have become aware.

151.  Fraudulent: A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test.

a.  As set forth herein, Defendant's representations and omissions about the quality, benefits, and effectiveness of the Zignature Limited Ingredient Diets were and are false and likely to mislead or deceive the public because a significant portion of the general consuming public, acting reasonably in the circumstances, could be misled by Defendant's representations and omissions.

152.  Defendant profited from its sale of the falsely, deceptively, and unlawfully advertised and packaged the Zignature Limited Ingredient Diets to unwary consumers.

153.  Defendant's conduct directly and proximately caused and continues to cause substantial injury to Plaintiff Gifford, Plaintiff Molina, and California Subclass. Plaintiff Gifford, Plaintiff Molina, and California Subclass have suffered injury-in-fact as a result of Defendant's unlawful conduct including but not limited to the damages as described above.

154.  Plaintiff Gifford, Plaintiff Molina, and California Subclass are likely to continue to be damaged by Defendant's deceptive trade practices, because Defendant continues to disseminate misleading information on the Zignature Limited Ingredient Diets' packaging and through the marketing and advertising of the Zignature Limited Ingredient Diets. Thus, injunctive relief enjoining Defendant's deceptive practices is proper.

155.  In accordance with Bus. & Prof. Code § 17203, Plaintiff Gifford and Plaintiff Molina seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

156.  Plaintiff Gifford, Plaintiff Molina, and California Subclass also seek an order for and restitution of all monies from the sale of the Zignature Limited Ingredient Diets, which were unjustly acquired through acts of unlawful competition.

## COUNT 10
## <u>VIOLATIONS OF THE MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT</u>
### (Minn. Stat. § 325d.43, *et seq.*)

157.   Plaintiff Miland brings this count on behalf of himself and the Minnesota Subclass and repeats and re-alleges all previous paragraphs, as if fully included herein.

158.   By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by misrepresenting that the Zignature Limited Ingredient Diets did not contain chicken or grain when, in fact, the Zignature Limited Ingredient Diets contained grain and chicken.

159.   Defendant's business practice of marketing, advertising, and promoting its Zignature Limited Ingredient Diets in a misleading, inaccurate, and deceptive manner constitutes unconscionable commercial practice, deception, and misrepresentation and, accordingly, constitutes multiple, separate violations of the Minnesota Deceptive Trade Practices Act ("Minnesota DTPA").

160.   The Minnesota DTPA prohibits deceptive trade practices. Minn. Stat. § 325D. 44.

161.   In marketing, advertising, and promoting the Zignature Limited Ingredient Diets to consumers, including Plaintiff Miland and members of the Minnesota Subclass, Defendant materially misrepresented and omitted key aspects regarding the Zignature Limited Ingredient Diets throughout the United States, including the State Minnesota.

162.   The foregoing deceptive acts and practices were directed at consumers.

163.   The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics, ingredients, benefits, quality, and nature of the Zignature Limited Ingredient Diets to induce consumers to purchase the same, and/or to pay a premium for the product.

164. Defendant's unconscionable commercial practices, false promises, misrepresentations, and omissions set forth in this Complaint are material in that they

relate to matters which reasonable persons, including Plaintiff Miland and members of the Minnesota Subclass, would attach importance to in making their purchasing decisions or conducting themselves regarding the purchase of the Zignature Limited Ingredient Diets.

165. Plaintiff and members of the Minnesota Subclass were injured because: (a) they would not have purchased the Zignature Limited Ingredient Diets, or would not have purchased the Zignature Limited Ingredient Diets on the same terms, had they known that the Zignature Limited Ingredient Diets in fact contained grain and/or chicken; (b) they paid a price premium for the Zignature Limited Ingredient Diets based on Defendant's false and misleading statements; and (c) the Zignature Limited Ingredient Diets did not have the characteristics and benefits promised because it contained grain and chicken. As a result, Plaintiff and members of the Minnesota Subclass have been damaged in an amount to be proven at trial, but not less than either the purchase price of the Zignature Limited Ingredient Diets or, alternatively, the difference in value between the Zignature Limited Ingredient Diets as advertised and the Zignature Limited Ingredient Diets as actually sold.

166. Pursuant to Minn. Stat. §§ 8.31(3a), 325D.45, and 549.20(1)(a), on behalf of himself and other members of the Minnesota Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, seeks an order awarding damages and any other just and proper relief under the Minnesota DTPA.

## COUNT 11
## VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD ACT
### (815 ILCS 505/1, *et seq.* and 510/2)

167. Plaintiff Perri brings this count on behalf of herself and the Illinois Subclass and repeats and re-alleges all previous paragraphs, as if fully included herein.

168. By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by misrepresenting that the Zignature Limited Ingredient

Diets did not contain chicken or grain when, in fact, the Zignature Limited Ingredient Diets contained grain and chicken.

169.   Defendant's business practice of marketing, advertising, and promoting its Zignature Limited Ingredient Diets in a misleading, inaccurate, and deceptive manner constitutes unconscionable commercial practice, deception, and misrepresentation and, accordingly, constitutes multiple, separate violations of the Illinois Consumer Fraud Act ("Illinois CFA").

170.   The Illinois prohibits deceptive trade practices. 815 ILCS 505/2.

171.   In marketing, advertising, and promoting the Zignature Limited Ingredient Diets to consumers, including Plaintiff Perri and members of the Illinois Subclass, Defendant materially misrepresented and omitted key aspects regarding the Zignature Limited Ingredient Diets throughout the United States, including the State Illinois.

172.   The foregoing deceptive acts and practices were directed at consumers.

173.   The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics, ingredients, benefits, quality, and nature of the Zignature Limited Ingredient Diets to induce consumers to purchase the same, and/or to pay a premium for the product.

174.   Defendant's unconscionable commercial practices, false promises, misrepresentations, and omissions set forth in this Complaint are material in that they relate to matters which reasonable persons, including Plaintiff Perri and members of the Illinois Subclass, would attach importance to in making their purchasing decisions or conducting themselves regarding the purchase of the Zignature Limited Ingredient Diets.

175.   Plaintiff Perri and members of the Illinois Subclass were injured because: (a) they would not have purchased the Zignature Limited Ingredient Diets, or would not have purchased the Zignature Limited Ingredient Diets on the same terms, had they known that the Zignature Limited Ingredient Diets in fact contained grain and/or

chicken; (b) they paid a price premium for the Zignature Limited Ingredient Diets based on Defendant's false and misleading statements; and (c) the Zignature Limited Ingredient Diets did not have the characteristics and benefits promised because it contained grain and chicken. As a result, Plaintiff Perri and members of the Illinois Subclass have been damaged in an amount to be proven at trial, but not less than either the purchase price of the Zignature Limited Ingredient Diets or, alternatively, the difference in value between the Zignature Limited Ingredient Diets as advertised and the Zignature Limited Ingredient Diets as actually sold.

176.  Pursuant to 815 ILCS 505/10a(a) and 510/3 on behalf of herself and other members of the Illinois Subclass, Plaintiff Perri seeks to enjoin the unlawful acts and practices described herein, seeks an order awarding damages and any other just and proper relief under the Illinois CFA.

## RELIEF DEMANDED

WHEREFORE, Plaintiffs, individually and on behalf of a class and subclasses of all others similarly situated, seek a judgment against Defendant, as follows:

a.  For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as Class and Subclass representatives and Plaintiffs' attorneys as Class Counsel;

b.  For an order declaring that Defendant's conduct violates the statutes referenced herein;

c.  For an order finding in favor of Plaintiffs and the Class and Subclass on all counts asserted herein;

d.  For compensatory, statutory, and punitive damages, as applicable, in amounts to be determined by the Court and/or jury;

e.  For prejudgment interest on all amounts awarded;

f.  For an order of restitution and all other forms of equitable monetary relief;

g.  For injunctive relief as pleaded or as the Court may deem proper; and

h.   For an order awarding Plaintiffs reasonable attorneys' fees, expenses and costs incurred in bringing this lawsuit.

**JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury on all claims so triable.

Dated: March 9, 2021.                          Respectfully submitted,

/s/ Alex R. Straus

Alex R. Straus, SBN 321366
**GREG COLEMAN LAW PC**
16748 McCormack Street
Los Angeles, CA  91436
Telephone: (310) 450-9689
Facsímile: (310) 496-3176
alex@gregcolemanlaw.com

Lisa A. White*
Arthur Stock*
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: 865-247-0080
Fax: 865-522-0049
lisa@gregcolemanlaw.com
arthur@gregcolemanlaw.com

Daniel K. Bryson*
J. Hunter Bryson*
**WHITFIELD BRYSON, LLP**
900 W. Morgan Street
Raleigh, NC, 27603
Tel: (919) 600-5000
dan@whitfieldbryson.com
hunter@whitfieldbryson.com

*Attorneys for Plaintiffs*
* by *pro hac vice*