1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10
11

Case No.: CV 21-02136-CJC(MRWx)

12

**PAUL GIFFORD, *et al.*, on behalf of himself and all others similarly situated,**

13
14

**ORDER DENYING PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT [Dkt. 45]**

**Plaintiffs,**

15
16

**v.**

17

**PETS GLOBAL, INC.,**

18
19

**Defendant.**

20
21
22

**I.     INTRODUCTION**

23
24
25

On March 9, 2021, Plaintiffs Paul Gifford, Mary Lou Molina, Randy Miland, and

26

Karen Perri filed this putative consumer class action alleging that Defendant Pets Global,

27

Inc. misrepresented the kind of ingredients used in its Zignature Limited Ingredient pet

28

food line.[1]  (Docket 1 [Class Action Complaint].)  On June 2, 2021, Plaintiffs filed their First Amended Class Action Complaint.  (Dkt. 23 [hereinafter "FAC"].)  In their FAC, Plaintiffs allege claims for breach of express warranty under California law, Minnesota law, and Illinois law, (Count I, II); breach of implied warranty under California Law, Minnesota Law, and Illinois Law (III, IV, V); unjust enrichment (Count VI); violations of California's Consumer Legal Remedies Act (Count VII), California's False Advertising Law (Count VIII), and California's Unfair Competition Law (Count VIV); violations of Minnesota's Uniform Deceptive Trade Practices Act (Count X); and violations of Illinois's Consumer Fraud Act (Count XI).  (FAC ¶¶ 69–184.)  Now before the Court is Plaintiffs' unopposed motion for preliminary approval of the proposed class action settlement.  [Dkt. 45 [hereinafter "Mot."].)  For the following reasons, Plaintiffs' motion is **DENIED**.[2]

## II.    BACKGROUND

### A.    Factual Allegations

Defendant designs, manufactures, markets, and sells pet food products online and through third-party retailers throughout the United States.  (FAC ¶ 8.)  Plaintiffs are individuals who have each purchased Defendant's Zignature Limited Ingredient pet food line because of certain representations Defendant made about the products in this line. (*Id.* ¶¶ 13–28.)

---

[1] Plaintiff Karen Perri voluntarily dismissed her claims against Defendant on October 12, 2021 and is no longer a named plaintiff in this action.  (Dkt. 42 [Karen Perri's Notice of Voluntary Dismissal].)

[2] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for January 10, 2022 at 1:30 p.m. is hereby vacated and off calendar.

Specifically, Plaintiffs allege that Defendant represents to its consumers that its Zignature Limited Ingredient pet food line is "grain free" and "chicken free." (*Id.* ¶ 53.) Although pet foods vary in the quality of ingredients, formula, manufacturing processes, and inspection quality, dog owners often choose to purchase products that have "limited ingredients"—such as grain-free or chicken-free—at a premium because certain dog breeds have allergies associated with dog foods that contain these ingredients or because the owners believe that certain ingredients help (or hamper) their pets' health, weight, and overall well-being. (*Id.* ¶¶ 40, 50.) Plaintiffs allege that they were harmed because they paid a premium for these products, but the products did not conform to representations on their packaging nor to warranties Defendant made regarding their quality. (*Id.* ¶¶ 13–28.)

## B.    Proposed Settlement Terms

After Plaintiffs filed their FAC, the parties participated in an all-day mediation session with the Honorable Wayne Anderson (Ret.) of JAMS Chicago. (Dkt. 47 [Declaration of J. Hunter Bryson in Support of Motion for Preliminary Approval, hereinafter "Bryson Decl."] ¶ 6.) The case did not settle. However, conversations between the parties continued, and Judge Anderson ultimately made a mediator's proposal that both parties accepted. (*Id.*) The parties did not discuss attorneys' fees, costs, or service awards until after they agreed on the material terms and structure of the settlement. (*Id.*) Negotiations continued for an additional six weeks before the proposed settlement was finalized on October 21, 2021. (*Id.* ¶¶ 7, 8.)

The proposed Settlement Agreement and Release (the "Settlement"), which is made pursuant to California law, encompasses all "pet food products manufactured or produced for Pets Global and marketed or labelled as 'grain free' or 'chicken free' or with some similar designation claiming the absence of any grain or chicken, and

including without limitation all Zignature products manufactured by Pets Global and those products listed in Plaintiffs' Amended Complaint" (the "Products").  (Dkt. 47-1 [Settlement Agreement and Release, hereinafter "Settlement Agreement"] §I(T).) Plaintiffs define the nationwide Class as:

> All persons residing in the United States who purchased the Products primarily for personal, family or household purposes, and not for resale, during the Class Period.  Excluded from the Settlement Class shall be jurists, mediators, plaintiffs' or defense counsel and their employees, legal representatives, heirs, successors, assigns, or any members of their immediate family; any government entity; Pets Global, any entity in which Pets Global has a controlling interest, any of Pets Global's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns or any members of their immediate family.

(Settlement Agreement § I(Y).)  The Class Period is defined as June 2, 2017 (four years prior to the filing of the FAC) through the Preliminary Approval of the Settlement.  (*Id.* §I(L).)

The Settlement has two primary benefits for Class Members.  Under the first, Class Members may submit a claim for monetary relief.  (Settlement Agreement § IV(B).) There is no cap on the amount dedicated to this benefit.  Those with valid claims are eligible to recover up to $10 for each purchase of a Product with proof of purchase, with a $100 cap per household.  (*Id*. § IV(B)(2)(a).)  Those without proof of purchase may be entitled to recover a maximum of $5 total.  (*Id*. § IV(B)(2)(b).)  The second benefit provides injunctive relief to the Class.  Defendant agrees to revise its product labels and marketing references so that Product labels that make a "chicken free" and "grain free" claim no longer contain those representations.  (*Id*. § IV(A)(1).)  However, Defendant will be able to sell all of its product that it has currently manufactured as of the Final Approval Order with these representations.  (*Id*. § IV(A)(3).)  Defendant also warrants that it will cooperate with Plaintiffs in presenting evidence to the Court regarding the

value of the injunctive relief, including, without limitation, the cost to Defendant to comply with the injunctive relief.  (*Id.* § IV(A)(4).)

Under the Settlement, Defendant also agrees to audit all of the manufacturing plants of suppliers for a period of 5 years following the Court's Final Approval Order. The audits will be at least once a year, and will include (1) a visual inspection of all manufacturing machines that process, store, or otherwise come into contact with the petfood manufactured within said facility and purchased by Defendant; (2) an audit of the manufacturer's manufacturing process and sourcing records, to confirm the accuracy of the ingredients being used in Defendant's products; and (3) ensuring that all the manufacturing processes used by the manufacturing plant adhere to quality control standards.  (*Id.* § IV(D).)

Defendant also agrees that it will not oppose Class Counsel's application to the Court for attorneys' fees, costs, and expenses in an amount not to exceed $875,000.  (*Id.* §§ V(A), V(E).)  This amount specifically includes all costs and fees incurred by Class Counsel and Plaintiffs' Counsel in connection with the action thus far, as well as ongoing and future costs and fees through finalization of Settlement of this action.  (*Id.*) However, the exact amount of fees awarded shall be determined by the Court in its discretion and the determination thereof will not impact the validity or fulfillment of the Settlement Agreement.  (*Id.*)  Defendant has also agreed to pay service awards not to exceed $5,000 to each class representative.  (*Id.* §§ V(C), V(E).)

The Settlement also proposes that JND Legal Administration act as Settlement Administrator and offers a provisional plan for Class Notice.  (*Id.* § I(W).)  Upon approval of the Court, JND will distribute notice to the class (i) via print, Internet and

social media notice; and (ii) via an established Settlement Website.[3]  (*Id.* § VII(A).)  The Settlement Administrator will also establish a toll-free number to provide information to the Settlement Class, including on how to submit Claim forms.  (*Id.*)

## III.   DISCUSSION

In analyzing a motion for preliminary approval of a class settlement agreement, the Court must evaluate whether the proposed class may be conditionally certified for the purposes of settlement and whether the settlement terms are appropriate under Federal Rule of Civil Procedure 23.  The Court finds that Plaintiffs have not met the numerosity requirement of Rule 23(a), though they do meet the requirements of typicality, commonality, and adequacy.  Plaintiffs have also failed to show the Settlement is fair, adequate, and reasonable under Rule 23(e) because it is unclear to the Court at this stage whether Plaintiffs will be able to meaningfully benefit from the agreement.

### A.   Class Certification Requirements

When a plaintiff seeks provisional class certification for purposes of settlement, the Court must ensure that the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b) are met.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Staton v. Boeing Co.*, 327 F.3d 938, 952–53 (9th Cir. 2003).  Under Rule 23(a), the plaintiff must show the class is sufficiently numerous, that

---

[3] The Settlement states that Defendant will provide physical mailing addresses and e-mail addresses so that notice will also be issued via U.S. mail and e-mail to Class Members.  (Settlement Agreement § VII(A).)  Confusingly, the Settlement also states that Defendant "does not have such information related to Settlement Class Members."  (*Id.*)  JND's proposed notice program, described in a declaration submitted to the Court, also does not discuss distributing notice via U.S. Mail or e-mail.  (Dkt. 48 [Declaration of JND Representative Gina M. Intrepido-Bowden Regarding Proposed Notice Program of Class Action Settlement].)  Thus, the Court does not consider distribution of notice via U.S. Mail and e-mail as part of the proposed notice distribution plan.

there are questions of law or fact common to the class, that the claims or defenses of the representative parties are typical of those of the class, and that the representative parties will fairly and adequately protect the class's interests.  Under Rule 23(b), the plaintiff must show that the action falls within one of the three authorized "types" of classes.  Here, Plaintiffs seek certification pursuant to Rule 23(b)(3).  Rule 23(b)(3) allows certification where (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### 1.    Plaintiffs Have Not Met the Requirements of Rule 23(a) for Settlement Purposes

Plaintiffs satisfy Rule 23(a)'s prerequisites of commonality, typicality, and adequacy of representation, but fail to satisfy the numerosity requirement.  Fed. R. Civ. P. 23(a).

### a)  Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable."  "No exact numerical cut-off is required; rather, the specific facts of each case must be considered."  *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009) (citing *Gen. Tel. Co. of Nw., Inc. v. E.E.O.C.*, 446 U.S. 318, 330 (1980)).  "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members."  *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 602–03 (C.D. Cal. 2015); *see Tait v. BSH Home Appliances Corp.,* 289 F.R.D. 466, 473–74 (C.D. Cal. 2012).

Here, Plaintiffs fail to provide any estimate of the number of people in the class. Rather, they contend that "the proposed Class easily satisfies the numerosity requirement and is so numerous that joinder of their claims is impracticable." (Mot. at 19.)  At this point in the litigation—after Plaintiffs have investigated their claims and have negotiated with Defendant—the parties should be able to provide some estimation to the Court about the size of the Class.  Accordingly, the Court is unable to determine whether the number of class members is so high such that joinder would be impracticable.

### b) Common Questions of Law and Fact

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  The plaintiff must "demonstrate that the class members 'have suffered the same injury,'" which "does not mean merely that they have all suffered a violation of the same provision of law." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).  Rather, the plaintiff's claim must depend on a "common contention" that is capable of class-wide resolution.  *Id.* This means "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*

Plaintiffs maintain that there are several issues of both law and fact here that are common to the Class Members.  Common questions raised in Plaintiffs' FAC include whether the Zignature Limited Ingredient products contain grains and/or chicken; whether Defendant's representations that its products do not contain grains and chicken are false; whether Defendant expressly warranted that the Zignature Limited Ingredient products would conform to the representations made on its packaging; whether the Zignature Limited Ingredient diets would conform to the representations that they are limited ingredient products; whether Defendant breached its warranties; and whether Defendant was unjustly enriched.  (FAC ¶ 65.)  The claims are also based on the same

legal theories.  Plaintiffs allege that Defendant misrepresented the actual ingredients of its Zignature Limited Ingredient products, namely by including grain and chicken despite claiming those ingredients are not present in the products.  These alleged misrepresentations were made in the same way to all class members.  These common questions and legal theories are central to each Class Member's claims and their resolution will help determine, "in one stroke," whether Defendant violated the law.  *See Falcon*, 457 U.S. at 157.

### c)  Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class."  Representative claims are "typical" if they are "reasonably coextensive with those of the absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  Here, Plaintiffs allege that, like every other class member, they purchased Zignature Limited Ingredient pet products based on representations Defendant made that the food was "grain free" or "chicken free," paying a premium as a result.  (*See* FAC ¶¶ 14–29.) Accordingly, Plaintiffs' claims are "reasonably coextensive" with those of the class.  *See Hanlon*, 150 F.3d at 1020.

### d)  Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  This factor requires (1) a lack of conflicts of interest between the proposed class and the proposed representative plaintiffs, and (2) representation by qualified and competent counsel that will prosecute the action vigorously on behalf of the class.  *Staton*, 327 F.3d at 957.  The concern in the context of a class action settlement is that there is no collusion between the defendant, class counsel,

and class representatives to pursue their own interests at the expense of the interests of the class.  *Id*. at 958 n.12.

There is no evidence of a conflict of interest between Plaintiffs and the Class. Plaintiffs' claims are identical to those of the Class and they have every incentive to vigorously pursue those claims.  (*See* FAC ¶¶ 14–29.)

Nor is there any evidence that Plaintiffs' counsel will not adequately represent or protect the interests of the Class.  Plaintiffs are represented by the law firm Milberg Coleman Bryson Phillips Grossman, PLLC.  (Bryson Decl. ¶ 15, Ex. 2 [Firm Resume].) Plaintiffs' attorneys are active practitioners who are highly experience in class action, consumer fraud, and mislabeling litigation.  (*Id.* ¶ 16.)  Class Counsel is also actively involved in litigation against similar pet food manufacturers and have gained perspective on this matter from their experience in these other actions.  (Mot. at 18.)

## 2.     Plaintiffs Satisfy Rule 23(b)(3)'s Requirements

In addition to the requirements of Rule 23(a), Plaintiffs must satisfy the requirements of Rule 23(b) to show that the action falls within one of the three authorized "types" of classes.  Here, Plaintiffs seek certification under Rule 23(b)(3).  Rule 23(b)(3) allows certification where (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### a) Predominance

Although the predominance requirement overlaps with Rule 23(a)(2)'s commonality requirement, it is a more demanding inquiry. *Hanlon*, 150 F.3d at 1019. The "main concern in the predominance inquiry . . . [is] the balance between individual and common issues." *In re Wells Fargo Home Mortg. Overtime Pay Litig.,* 571 F.3d 953, 959 (9th Cir. 2009). The plaintiff must show that "questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013).

Here, common questions of law and fact exist and predominate over any individual questions, including (1) whether Defendant's representations regarding the actual ingredients of its Zignature Limited Ingredient products were false and misleading or reasonably likely to deceive consumers; (2) whether Defendant violated applicable consumer fraud statutes; and (3) whether the Class has been injured by the wrongs complained of, and if so, whether Plaintiffs and the Class are entitled to damages, injunctive and/or other equitable relief, including restitution or disgorgement, and if so, the nature and amount of such relief. (Mot. at 23.) Since these "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication[,]" predominance is met. *Hanlon*, 150 F.3d at 1022.

The predominance inquiry does not end there. Plaintiffs are seeking to apply California law to the entirety of the nationwide class, requiring Class Members to surrender any claims they may have under any other state's law regardless of where they live. (Mot. at 24.) Under Ninth Circuit precedent, in certain circumstance courts are required to ensure that the application of California law is in line with California's choice-of-law rules, requiring the Court to assess whether the interest of foreign states would be impaired by the application of California law to each Class Member. *Mazza v.*

*Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012).  Recent law, however, has clarified that a district court is not required to conduct a choice-of-law analysis when analyzing the predominance requirement for the purposes of settlement.  *Jabbari v. Farmer*, 965 F.3d 1001, 1007 (9th Cir. 2020) ("[A]s a general rule, a district court does not commit legal error by not conducting a choice-of-law analysis, despite variations in state law, before determining that common issues predominate for a settlement class.") (explaining the holding of *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc)).  The risk that a foreign state's interest would be impaired is also minimized here by the fact that Defendant does not oppose the application of California law to the Class claims and thus does not attempt to show that another state's laws should apply.  *See Hyundai*, 926 F.3d at 561.

### b) Superiority

Class actions certified under Rule 23(b)(3) must also be "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Courts consider four nonexclusive factors in evaluating whether a class action is the superior method for adjudicating a plaintiff's claims: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions, (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class, (3) the desirability of concentrating the litigation of the claims in the particular forum, and (4) the difficulties likely to be encountered in the management of a class action.  *Id.*

The Court finds that proceeding as a class is superior to other methods of resolving this case.  A class action may be superior "[w]here classwide litigation of common issues will reduce litigation costs and promote greater efficiency."  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).  A class action may also be superior when "no

realistic alternative" to a class action exists.  *Id.* at 1234–35.  Given the common issues presented by all Class Members, adjudicating these claims on an individual basis for numerous potential plaintiffs would be not only inefficient, but also unrealistic.  Although the Court foresees no management problems from litigating this dispute as a class action, the Supreme Court has held that a district court "need not inquire whether the case, if tried, would present intractable management problems" in a "settlement-only class certification."  *Amchem*, 521 U.S. at 620.

Though Plaintiffs have satisfied the majority of requirements for provisional class certification, they must satisfy the numerosity requirement under Rule 23(a).  Thus, the Court cannot provisionally certify the Class at this time.

## B.    Class Settlement Agreement Requirements

Approval of class action settlements is governed by Federal Rule of Civil Procedure 23(e).  A district court may approve class action settlements only when they are "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  The Rule requires courts to consider whether "(A) the class representatives and class counsel have adequately represented the class[,] (B) the proposal was negotiated at arm's length[,] (C) the relief provided for the class is adequate[,] and (D) the proposal treats class members equitably relative to each other."  *Id.* 23(e)(2)(A–D).  In determining whether the class's relief is "adequate," courts must analyze "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."  *Id.* 23(e)(2)(C).

"[W]hether a proposed settlement comports with Rule 23(e)(2) is [also] guided by the '*Churchill* factors,'"—which encompass some of the factors enumerated in Rule 23(e)—"viz., '(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.'"[4]  *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021) (*quoting In re Bluetooth Headset Prods. Liab.*, 654 F.3d 935, 946 (9th Cir. 2011)); *see also Churchill Vill. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004).  "Only when the district court 'explore[s] these factors comprehensively' can the settlement award 'survive appellate review.'"  *Id.* (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)); *see also* Fed. R. Civ. P. 23(e)(2) Adv. Cmt. Note to 2018 Amendment (the factors identified in 23(e)(2) do not "displace" existing factors, but instead "focus the court and the lawyers on the core concerns of procedure and substance").

When, as in this case, "a settlement agreement is negotiated *prior* to formal class certification," the settlement "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair."  *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 946.  Courts must be wary of "subtle signs" of collusion such as "(1) when counsel receive a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing' arrangement (*i.e.*, an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a

---

[4] The *Churchill* factors are also known as the *Hanlon* factors and the *Staton* factors.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).

reverter that returns unclaimed [funds] to the defendant." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019).

### 1.     Plaintiffs Fail to Show the Settlement is Fair, Adequate, and Reasonable

Plaintiffs have failed to show that the proposed class action settlement is adequate, fair, and reasonable given that the claims rate is likely to be low in this case because most Class Members will likely only be eligible for a maximum relief amount of $5; the fact that Plaintiffs provide no estimate of the value of injunctive relief or audit relief offered to the Class; and the Court's inability to determine whether the requested attorneys' fees are reasonable.

It is unclear to the Court whether Class Members will receive a meaningful benefit under the Settlement.  The monetary benefit, though uncapped, may be difficult for Class Members to obtain.  Those with valid claims and proof of purchase may be eligible to receive up to $100 for purchased products at ($10 per claim for a maximum of 10 claims), while those without proof of purchase will be eligible to receive a total of $5. The Court questions whether a significant portion of the Class will have the required documentation to file a higher value claim and whether Class Members who do not have the required proof of purchase will find $5 worth the time and effort to file a claim in the first place.  *See Briseno v. ConAgra Foods, Inc.*, 2:11-cv-05379-CJC-AGR, Dkt. 779 [Order Denying Plaintiffs' Motion for Final Approval of Class Action Settlement], at *14 (C.D. Cal. Dec. 22, 2021); *Briseno*, 998 F.3d at 1026 (expressing concern regarding disproportion between attorney fees and class relief because "[s]o little goes to the class members in a claims-made settlement, such as this one, because the redemption rate is notoriously low, especially when it involves small-ticket items").  There is a significant discrepancy between a $100 maximum benefit and a $5 maximum benefit.  If the

overwhelming majority of the class is not able to produce proof of purchase, as the Court suspects is the case, then the overall amount offered to the Class may be miniscule. Though the Court acknowledges that it is speculating as to these specific issues, this is in part because Plaintiffs have failed to offer any concrete estimate of the size of the class or the expected claims rate.

Nor is the Court able to assess whether a $5 benefit adequately addresses the injuries of Class Members.  Though Plaintiffs warrant that the amount of monetary relief offered is commensurate with the calculated price premium Plaintiffs paid for the Zignature Limited Ingredient products, they offer no estimation of the amount of that price premium.  If the premium is higher than $5 per product, this would suggest that Plaintiffs are not being adequately compensated for their injuries under the Agreement. Nor is there any estimation of whether Defendant's customers repeatedly bought or buy the products at issue, raising additional concerns that Class Members who have purchased multiples of the misrepresented products will not be adequately compensated under the proposal.

Plaintiffs have also failed to provide any estimation of the value of the injunctive relief sought under the Agreement, nor the value of the audits Defendant has agreed to perform.  Despite the fact that Plaintiffs state that they worked with economists in assessing the damages at issue, they provide none of these figures, forcing the Court to guess at what the claims may be worth.  (Bryson Decl. ¶ 4 ["the Plaintiffs consulted with an economist regarding the calculation of damages related to misrepresentations about product ingredients, including regarding calculating damages for paying a price premium for the inclusion or exclusion of certain key ingredients."].)  Without these figures, the analysis Plaintiffs offer is incomplete.  For example, the Court is unable to determine whether the amount of fees counsel seeks is disproportionate to the class's relief.

-16-

Compounding the problem is the amount of attorneys' fees and costs Plaintiffs' counsel is seeking in this case.  Though subject to Court approval, Plaintiffs' counsel seeks—and Defendant agrees not to oppose—$875,000 in fees for a case that is relatively young and in which there has been limited motion practice.  Counsel also fails to offer any estimation of how many hours have been spent on this case thus far nor what kind of attorney rates they would seek.  These outstanding questions add to the Court's concern that the amount of the attorneys' fees and expenses sought will not be proportional to the relief offered to the Class.  Absent additional information, the Court is also unable to assess whether there are any subtle signs of collusion that may suggest that Plaintiff's counsel and Defendant put their interests above the Class as it is required to do under Ninth Circuit precedent.  *See Roes, 1-2*, 944 F.3d at 1049; *Briseno*, 998 F.3d at 1027.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** preliminary approval of the Settlement without prejudice.  The parties may submit a renewed motion for preliminary approval, if they wish to do so, by **April 4, 2022**.

DATED:      January 6, 2022

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE