**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PAUL GIFFORD, *et al.*, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PETS GLOBAL, INC.,<br><br>Defendant. | Case No.: CV 21-02136-CJC(MRWx)<br><br>**ORDER GRANTING PLAINTIFFS' UNOPPOSED RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT [Dkt. 51]** |

## I. INTRODUCTION

On March 9, 2021, Plaintiffs Paul Gifford, Mary Lou Molina, Randy Miland, and Karen Perri filed this putative consumer class action alleging that Defendant Pets Global, Inc. ("Pets Global") misrepresented the kind of ingredients used in its Zignature Limited

Ingredient pet food line.[1]  (Docket 1 [Class Action Complaint].)  On June 2, 2021, Plaintiffs filed their First Amended Class Action Complaint.  (Dkt. 23 [hereinafter "FAC"].)  In their FAC, Plaintiffs allege claims for breach of express warranty under California law, Minnesota law, and Illinois law, (Count I, II); breach of implied warranty under California Law, Minnesota Law, and Illinois Law (III, IV, V); unjust enrichment (Count VI); violations of California's Consumer Legal Remedies Act (Count VII), California's False Advertising Law (Count VIII), and California's Unfair Competition Law (Count VIV); violations of Minnesota's Uniform Deceptive Trade Practices Act (Count X); and violations of Illinois's Consumer Fraud Act (Count XI).  (FAC ¶¶ 69–184.)  In January of 2022, this Court denied Plaintiffs' first motion for preliminary approval of the proposed class action settlement, finding that Plaintiff had failed to satisfy Rule 23(a)'s numerosity requirement and the requirements of Rule 23(e).  (Dkt. 50 [Court's Order Denying Plaintiffs' Unopposed Motion for Approval of the Class Action Settlement].)  The Court explained that though Plaintiffs had satisfied Rule 23(a)'s other requirements and Rule 23(b)(3)'s requirements, the Court lacked sufficient information to determine if the proposed settlement is fair, adequate, or reasonable or sufficiently numerous such that a class action is warranted.  (*Id.* at 15–17.)  Now before the Court is Plaintiffs' renewed motion for preliminary approval of the proposed class action settlement.  (Dkt. 51 [hereinafter "Mot."].)  For the following reasons, Plaintiffs' renewed motion for preliminary approval of the proposed class action settlement is **GRANTED**.[2]

---

[1] Plaintiff Karen Perri voluntarily dismissed her claims against Defendant on October 12, 2021 and is no longer a named plaintiff in this action.  (Dkt. 42 [Karen Perri's Notice of Voluntary Dismissal].)

[2] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for June 27, 2022 at 1:30 p.m. is hereby vacated and off calendar.

## II. BACKGROUND

### A. Factual Allegations

Defendant designs, manufactures, markets, and sells pet food products online and through third-party retailers throughout the United States. (FAC ¶ 8.) Plaintiffs are individuals who have each purchased Pets Global's Zignature Limited Ingredient pet food line because of certain representations Pets Global made about the products in this line. (*Id.* ¶¶ 13–28.)

Specifically, Plaintiffs allege that Pets Global represents to its consumers that its Zignature Limited Ingredient pet food line is "grain free" and "chicken free." (*Id.* ¶ 53.) Although pet foods vary in the quality of ingredients, formula, manufacturing processes, and inspection quality, dog owners often choose to purchase products that have "limited ingredients"—such as grain-free or chicken-free—at a premium because certain dog breeds have allergies associated with dog foods that contain these ingredients or because the owners believe that certain ingredients help (or hamper) their pets' health, weight, and overall well-being. (*Id.* ¶¶ 40, 50.) Plaintiffs allege that they were harmed because they paid a premium for these products, but the products did not conform to representations on their packaging nor to warranties Defendant made regarding their quality. (*Id.* ¶¶ 13–28.)

### B. Proposed Settlement Terms

After Plaintiffs filed their FAC, the parties participated in an all-day mediation session with the Honorable Wayne Anderson (Ret.) of JAMS Chicago. (Dkt. 47 [Declaration of J. Hunter Bryson in Support of Motion for Preliminary Approval, hereinafter "Bryson Decl."] ¶ 6.) The case did not settle. However, conversations

between the parties continued, and Judge Anderson ultimately made a mediator's proposal that both parties accepted. (*Id.*) The parties did not discuss attorneys' fees, costs, or service awards until after they agreed on the material terms and structure of the settlement. (*Id.*) Negotiations continued for an additional six weeks before the proposed settlement was finalized on October 21, 2021. (*Id.* ¶¶ 7, 8.)

The proposed Settlement Agreement and Release (the "Settlement"), which is made pursuant to California law, encompasses all "pet food products manufactured or produced for Pets Global and marketed or labelled as 'grain free' or 'chicken free' or with some similar designation claiming the absence of any grain or chicken, and including without limitation all Zignature products manufactured by Pets Global and those products listed in Plaintiffs' Amended Complaint" (the "Products"). (Dkt. 47-1 [Settlement Agreement and Release, hereinafter "Settlement Agreement"] § I(T).) Plaintiffs define the nationwide Class as:

> All persons residing in the United States who purchased the Products primarily for personal, family or household purposes, and not for resale, during the Class Period. Excluded from the Settlement Class shall be jurists, mediators, plaintiffs' or defense counsel and their employees, legal representatives, heirs, successors, assigns, or any members of their immediate family; any government entity; Pets Global, any entity in which Pets Global has a controlling interest, any of Pets Global's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns or any members of their immediate family.

(Settlement Agreement § I(Y).) The Class Period is defined as June 2, 2017 (four years prior to the filing of the FAC) through the Preliminary Approval of the Settlement. (*Id.* §I(L).)

The Settlement has two primary benefits for Class Members. Under the first, Class Members may submit a claim for monetary relief. (Settlement Agreement § IV(B).)

There is no cap on the amount dedicated to this benefit. Those with valid claims are eligible to recover up to $10 for each purchase of a Product with proof of purchase, with a $100 cap per household. (*Id*. § IV(B)(2)(a).) Those without proof of purchase may be entitled to recover a maximum of $5 total. (*Id*. § IV(B)(2)(b).) The second benefit provides injunctive relief to the Class. Defendant agrees to revise its product labels and marketing references so that Product labels that make a "chicken free" and "grain free" claim no longer contain those representations. (*Id*. § IV(A)(1).) Plaintiffs' expert estimates that the total value of the injunctive relief secured is $273,789,121. (Dkt 55 [Declaration of Frank Bernatowicz, hereinafter "Bernatowicz Decl."] ¶ 21.)

Under the Settlement Agreement, Pets Global also agrees to audit all of the manufacturing plants of suppliers for a period of 5 years following the Court's Final Approval Order. The audits will be at least once a year, and will include (1) a visual inspection of all manufacturing machines that process, store, or otherwise come into contact with the petfood manufactured within said facility and purchased by Defendant; (2) an audit of the manufacturer's manufacturing process and sourcing records, to confirm the accuracy of the ingredients being used in Defendant's products; and (3) ensure that all the manufacturing processes used by the manufacturing plant adhere to quality control standards. (*Id*. § IV(D).)

Defendant also agrees that it will not oppose Class Counsel's application to the Court for attorneys' fees, costs, and expenses in an amount not to exceed $875,000. (*Id*. §§ V(A), V(E).) This amount specifically includes all costs and fees incurred by Class Counsel and Plaintiffs' Counsel in connection with the action thus far, as well as ongoing and future costs and fees through finalization of Settlement of this action. (*Id*.) However, the exact amount of fees awarded shall be determined by the Court in its discretion and the determination thereof will not impact the validity or fulfillment of the

Settlement Agreement. (*Id.*) Defendant has also agreed to pay service awards not to exceed $5,000 to each class representative. (*Id.* §§ V(C), V(E).)

The Settlement also proposes that JND Legal Administration act as Settlement Administrator and offers a provisional plan for Class Notice. (*Id.* § I(W).) Upon approval of the Court, JND will distribute notice to the class (i) via print, Internet and social media notice; and (ii) via an established Settlement Website. (*Id.* § VII(A).) The Settlement Administrator will also establish a toll-free number to provide information to the Settlement Class, including on how to submit Claim forms. (*Id.*)

Class Members shall have access to the Claim Form via the Settlement's website. (Settlement Agreement, Ex. B [Claim Form].) Claim Forms may be submitted via mail or electronically on the website. Each claim will require the Class Member provide their name and address, email address, and warrant that the claimed purchases were direct retail purchases by the claimant, that the claimed purchases were not made for resale purposes, the product names, the approximate date of purchase, the approximate price, and the name of the retail store and the store location of each purchase.

Settlement Class members who do not wish to participate in the Settlement may opt-out of the Settlement by sending a written request to the Settlement Administrator. The notice will also provide information on how to object to the final approval of the class action settlement.

In exchange for the Settlement consideration, Plaintiffs and each Settlement Class Member, and each of their heirs, spouses, guardians, executors, administrators, representatives, agents, attorneys, insurers, partners, successors, predecessors-in-interest, and assigns, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Class Released Claims against Pets Global as defined in the Settlement Agreement. (Settlement Agreement VI(A).) The released claims are those that (1) were asserted or could have

been asserted in this Action, and those that (2) arise out of or are related in any way to any or all of the acts, omissions, facts, matters, transactions, occurrences, or events that were or could have been directly or indirectly alleged or referred to in the Action. (*Id.*, Ex. A.)

III.   **DISCUSSION**

      **A. Class Certification Requirements**

When a plaintiff seeks provisional class certification for purposes of settlement, the Court must ensure that the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b) are met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Staton v. Boeing Co.*, 327 F.3d 938, 952–53 (9th Cir. 2003). Under Rule 23(a), the plaintiff must show the class is sufficiently numerous, that there are questions of law or fact common to the class, that the claims or defenses of the representative parties are typical of those of the class, and that the representative parties will fairly and adequately protect the class's interests. Under Rule 23(b), the plaintiff must show that the action falls within one of the three authorized "types" of classes. Here, Plaintiffs seek certification pursuant to Rule 23(b)(3). Rule 23(b)(3) allows certification where (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

As explained in the Court's prior Order, Plaintiffs' have already satisfied Rule 23(a)'s requirements of typicality, commonality, and adequacy, in addition to the requirements of Rule 23(b)(3). The Court adopts and incorporates that analysis into this

Order and also finds that Plaintiffs have now satisfied Rule 23(a)'s numerosity requirement.

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." "No exact numerical cut-off is required; rather, the specific facts of each case must be considered." *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009) (citing *Gen. Tel. Co. of Nw., Inc. v. E.E.O.C.*, 446 U.S. 318, 330 (1980)). "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members." *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 602–03 (C.D. Cal. 2015); *see Tait v. BSH Home Appliances Corp.,* 289 F.R.D. 466, 473–74 (C.D. Cal. 2012). Plaintiffs now provides estimates that the class size would be approximately 824,393 people. (Byrson Decl. ¶ 20.) Plaintiffs arrived at that figure by reviewing sales data for the pet food products at issue over the proposed class period, which totaled 9,892,719 bags. Plaintiffs then assumed that each Class Member purchased one bag of dog food a month, arriving at the 824,393 figure. (*Id.*) Though the precise class size is not known at this time, such a class size would make joinder impracticable and proceeding as a class would promote the efficiency and economy of this action. Accordingly, the Court finds that Plaintiffs have satisfied Rule 23(a)'s numerosity requirement, along with the other requirements of 23(a) and 23(b)(3), and certifies the class for settlement purposes.

### B. Class Settlement Agreement Requirements

Approval of class action settlements is governed by Federal Rule of Civil Procedure 23(e). A district court may approve class action settlements only when they are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Rule requires courts to consider whether "(A) the class representatives and class counsel have adequately represented the class[,] (B) the proposal was negotiated at arm's length[,] (C) the relief

provided for the class is adequate[,] and (D) the proposal treats class members equitably relative to each other." *Id.* 23(e)(2)(A–D).  In determining whether the class's relief is "adequate," courts must analyze "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." *Id.* 23(e)(2)(C).

"[W]hether a proposed settlement comports with Rule 23(e)(2) is [also] guided by the '*Churchill* factors,'"—which encompass some of the factors enumerated in Rule 23(e)—"viz., '(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.'"[3]  *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021) (*quoting In re Bluetooth Headset Prods. Liab.*, 654 F.3d 935, 946 (9th Cir. 2011)); *see also Churchill Vill. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004).  "Only when the district court 'explore[s] these factors comprehensively' can the settlement award 'survive appellate review.'"  *Id.* (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)); *see also* Fed. R. Civ. P. 23(e)(2) Adv. Cmt. Note to 2018 Amendment (the factors identified in 23(e)(2) do not "displace" existing factors, but instead "focus the court and the lawyers on the core concerns of procedure and substance").

---

[3] The *Churchill* factors are also known as the *Hanlon* factors and the *Staton* factors.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).

When, as in this case, "a settlement agreement is negotiated *prior* to formal class certification," the settlement "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 946. Courts must be wary of "subtle signs" of collusion such as "(1) when counsel receive a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing' arrangement (*i.e.*, an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed [funds] to the defendant." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019).

### 1. The Proposed Settlement Offers Class Members Meaningful Benefits

Plaintiffs have shown that Class Members will receive meaningful benefits under the Settlement Agreement. The total monetary benefit for the class is uncapped, meaning that the pool of resources to fund the claims is unlimited. Those with valid claims and proof of purchase may be eligible to receive up to $100 for purchased products at ($10 per claim for a maximum of 10 claims), while those without proof of purchase will be eligible to receive a total of $5. Though there is a significant difference between a $100 maximum benefit and a $5 maximum benefit, Plaintiffs provide evidence that a claims rate estimate of 10% would make the total monetary benefit $515,332 for proof of purchase claimants and $231,900 for non-proof of purchase claimants for a total of $747,232 Though it is difficult to ascertain how many of each type of claim will ultimately be filed and the total compensation each class member will receive, even each class member who files a claim receives only $5, they would receive compensation that is commensurate with the calculated price premium Plaintiffs paid for the Zignature Limited Ingredient products and the allegedly false representations made about the food products.

Indeed, Plaintiffs' expert calculated that the price premium on a per bag basis ranges between $1.92 to $11.40, depending on the size of the bag purchased. (Bernatowicz Decl. ¶ 17.) Accordingly, a Class Member without proof of purchase would, at worst, receive 43% of his or her damages and at best would receive 260% of its damages depending again upon the size of the bag purchased. Though the settlement offer may not make some class members whole, the $5 compensation offered is a reasonable compromise for a class that encompasses members who purchased the same product in different size bags. And cases have received final approval when the compensation offered class members less than 43% of their damages. *See, e.g.*, *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving settlement that constituted 6% of maximum potential damages); *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 454 (C.D. Cal. 2014) (noting that award representing between 5% and 30% of recovery "is not a de minimis amount" and "weighs in favor of approval"); *Downey Surgical Clinic, Inc. v. Optuminsight, Inc.*, 2016 WL 5938722 at *5 (C.D. Cal. May 16, 2016) (granting final approval where recovery was as low as 3.21% of potential recovery at trial); *Stovall-Gusman v. W.W. Granger, Inc.*, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (granting final approval of a net settlement amount representing 7.3% of the plaintiffs' potential recovery at trial); *Shvager v. ViaSat, Inc.*, 2014 WL 12585790, at *10 (C.D. Cal. Mar. 10, 2014) (approving settlement representing "2.8% of the recovery that might have been obtained had the case continued").

The proposed Settlement also confers substantial benefits upon the Class when weighed against the risk associated with the inherent uncertain nature of litigation, the complex nature of the action, the difficulty and complexity of calculating actual economic harm attributable to allegedly false and misleading representations related to Pets Global's pet food products, and the length and expense of continued proceedings

through additional fact discovery, depositions, expert depositions, third party document productions and depositions, class certification briefing, summary judgment briefing, a jury trial, and appeals.

Moreover, "the uncapped nature of the proposed settlement . . . indicate[s] that class counsel and the named plaintiffs have attempted to serve the best interests of the class as a whole." *Turner v. NFL (In re NFL Players' Concussion Injury Litig.)*, 307 F.R.D. 351, 373 (E.D. Pa. 2015) (citing *Krell v. Prudential Ins. Co. of Am. (in Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*), 148 F.3d 283, 317 (3d Cir. 1998)). Simply put, "the Settlement accounts for uncertainty about the *precise* size of the Class by providing an uncapped guarantee" of settlement benefits. *Jabbari v. Wells Fargo & Co.*, 2018 U.S. Dist. LEXIS 239959, at *17 (N.D. Cal. June 14, 2018) (emphasis added).

Additionally, the settlement benefits offer more than just a cash component but injunctive relief and supplier auditing as well. The injunctive relief is significant in this case, removing the chicken free and grain free representations at issue across all of Pets Global's products and is estimated to be valued in the hundreds of millions. (Bryson Decl. ¶ 13.) Pets Global also agreed to audit all of the manufacturing plants of suppliers for a period of 5 years following the Court's Final Approval Order. (*Id.* at ¶ 14.) The audits of Pets Global's suppliers will happen at least once a year and includes: (1) the visual inspection of all manufacturing machines that process, store, or otherwise come into contact with the petfood manufactured within said facility and purchased by Pets Global; (2) an audit of the manufacturer's manufacturing process and sourcing records, to confirm the accuracy of the ingredients being used in Pets Global's products, and (3) ensuring that all of the manufacturing processes used by the manufacturing plant adhere to quality control standards. (*Id.*)

## 2. The Risks of Ongoing Litigation and Maintaining Class Status Also Supports Preliminary Approval

Proceeding in this litigation in the absence of settlement also poses various risks such as failing to certify a class, having summary judgment granted against Plaintiffs, or losing at trial. Such considerations weigh heavily in favor of settlement. *See Rodriguez*, 563 F.3d at 966; *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class."). Even if Plaintiffs are able to certify a class, there is also a risk that the Court could later decertify the class action. *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.") (internal citations omitted). The Settlement eliminates these risks by ensuring Class Members a recovery that is "certain and immediate, eliminating the risk that class members would be left without any recover . . . at all." *Fulford v. Logitech, Inc.*, 2010 U.S. Dist. LEXIS 29042, at *8 (N.D. Cal. Mar. 5, 2010).

Additionally, Plaintiffs acknowledge that proving their claims at summary judgment or trial would be arduous. For instance, Plaintiffs would have to prove Pets Global was responsible for making false and/or misleading representations and that the non-conforming ingredients in its products would be material to reasonable consumers. This would undoubtedly involve retaining expensive experts to both prove its own assertions and rebut any expert testimony opposing counsel presents. Plaintiffs would also be tasked with proving that every member purchased products that contained grain or chicken contaminants, which again would involve extensive and expensive expert testimony. The Settlement Agreement thus offers the class an opportunity to obtain relief at an early stage in the litigation, minimizing the risks posed by proceeding further in the action.

### 3. The Proposed Settlement is the Result of Arms-Length Negotiations

The Settlement is also the result of arms-length negotiations between the parties weighing in favor of approval. After Plaintiffs filed their FAC, the parties participated in an all-day mediation session with the Honorable Wayne Anderson (Ret.) of JAMS Chicago. (Bryson Decl. ¶ 6.) The case did not settle. However, conversations between the parties continued, and Judge Anderson ultimately made a mediator's proposal that both parties accepted. (*Id.*) The parties did not discuss attorneys' fees, costs, or service awards until after they agreed on the material terms and structure of the settlement. (*Id.*) Negotiations continued for an additional six weeks before the proposed settlement was finalized on October 21, 2021. (*Id.* ¶¶ 7, 8.) These negotiations resulted in the proposed settlement before the Court and the Court can discern no "subtle signs" of collusion between the parties, such as "(1) when counsel receive a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing' arrangement (*i.e.*, an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed [funds] to the defendant." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019).

### 4. The Extent of Discovery Thus Far and the Status of Proceedings Also Supports Preliminary Approval

Courts also evaluate whether class counsel has sufficient information to make an informed decision about the merits of the case when analyzing motions for preliminary approval. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Here, Class Counsel has conducted significant pre-litigation research, including the retention of an expert to analyze the ingredients of multiple Zignature Limited Ingredient Diets. (Bryson Decl. ¶ 4.) Plaintiffs also gathered scholarly research on the pervasive problem of pet food mislabeling especially where manufacturers claim to be using

specific, limited ingredients or claim to have eliminated certain ingredients from their Products. (*Id*.) Plaintiffs also consulted with an economist regarding the calculation of damages related to misrepresentations about product ingredients and for paying a price premium for the inclusion or exclusion of certain key ingredients. (*Id*.) This pre-litigation research helps ensure that plaintiffs have a firm grasp of the complexity of proving wide-spread liability in this action as well as proving price premium damages in this case. Additionally, through their mediation efforts and negotiations, the parties shared certain confirmatory discovery including sales figures and product testing results. *Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 459 (9th Cir. 2000). All of which ensures Plaintiffs understand the benefits the settlement agreement proposed confers.

### 5. The Experience and Views of Counsel Supports Preliminary Approval

Class counsel in this case also has significant experience in consumer class action litigation, including in litigation related to mislabeling and pet foods. (See Bryson Decl. ¶¶ 15, 16 & Ex. 2 [Firm Resume of proposed Class Counsel].) Based on their collective experience, Class Counsel concluded that the Settlement provides exceptional results for the class while sparing the class from the uncertainties of continued and protracted litigation. Thus, this factor also weighs in favor of approval.

### 6. The Expected Claims Rate Supports Preliminary Approval

The expected claims rate in this action is also commensurate with other class actions of similar caliber to the one presented here which received final approval. Plaintiffs' Counsel has been involved in two other pet food settlements involving non-conforming ingredients. In *Shaw et al v. Costco Wholesale Corporation et al*, at the conclusion of the claims period the claims the settlement received 22,520 without proof

of purchase claims ($5 per claim) and 1,562 claims with proof of purchase (up to $100) for a total of 24,082 claims. (Bryson Dec ¶ 18.) The total amount claimed by class members was $221,370. (*Id.*) In *Sarah Hill et al v. Canidae Corporation*, 5:20-cv-01374-JGB-SP, (C.D. Cal.) there were 48,080 claims made. (*Id.* ¶ 19). Of these 48,080 claims, 2,000 were filed with a proof of purchase ($5 for every $50 spent up to $125) and 46,080 were filed without proof of purchase ($5). (*Id.*) The maximum payout the claimants would receive was $480,400. (*Id.*) There were ultimately 37,096 valid claims and the defendant paid $189,660 to class members. (*Id.*)

Class Counsel expects a similar claims rate in this case. (*Id.* ¶ 20.) Defendant sold 9,892,719 bags of pet food over the proposed class period. Assuming a Class Member purchased one bag of dog food a month, that would make the class size approximately 824,393 people. (Bryson Decl. ¶ 20.) Claims rates often range from 1% to 10%, trending towards the lower end. *In re Myford Touch Consumer Litig.*, 2018 WL 10539266, at *2 (N.D. Cal. June 14, 2018); *see* 4 Newberg § 12:17 (recognizing that claims rates are often very low when relief is small and process burdensome); *Allen v. Bedolla*, 787 F.3d 1218, 1221 (9th Cir. 2015) (approximately 7% claims rate); *Tait*, 2015 WL 4537463 at *6 (less than 3% claims rate); *Yeagley v. Wells Fargo & Co.*, 2008 WL 171083, at *2 (N.D. Cal. Jan. 18, 2008) (less than 1% claims rate); *LaGorden v. Support.com, Inc.*, 2013 WL 1283325, at *6 (N.D. Cal. Mar. 26, 2013) (0.17% claims rate). Based on calculations from Defendant's actual sales data, a 1% claims rate for this case would be approximately 8,243 claims while a 10% claims rate would be approximately 82,439 claims. (Bryson Dec ¶ 20.) Though it is difficult to determine what the actual claims rate will be, the Court is satisfied at this stage of the litigation that enough class members will file claims to seeking relief such that preliminary approval is appropriate.

### 7. The Attorneys' Fees Sought is Reasonable

Class counsel also seeks a total amount of fees that shall not exceed $875,000, with the final amount to be determined and awarded by the Court. This figure is reasonable in light of the significant monetary value of the injunctive relief the settlement agreement provides, the auditing program that will ensure Pets Global's compliance with the terms of the Settlement Agreement, and the cash settlement conferred to individual claimants. Though the Court will evaluate closely the ultimate award Plaintiffs' counsel requests to ensure that it is commensurate with the Ninth Circuit's lode star method of calculating fees, at this stage of the litigation, the amount does not upset the fairness or adequacy of the proposed class settlement.

### 8. The Proposed Notice Program Also Weighs in Favor of Approval

For class actions certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(e)(1) also requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." When a court is presented with class notice pursuant to a settlement, both the class certification notice and notice of settlement may be combined in the same notice.

The proposed notice plan here is designed to reach at least 70% of the class at least two times. The Notices proposed in this matter inform Class Members of the salient terms of the Settlement, the Class to be certified, the final approval hearing and the rights of all parties, including the rights to file objections or to opt-out of the Settlement Class. The proposed Long Form Notice will provide directions on the requirements and deadlines to submit claims, to request exclusion, or to object to the Settlement. The

Parties in this case have also created and agreed to provide a variety of forms of notice, which collectively will satisfy both the substantive and manner of distribution requirements of Rule 23. Specifically, the proposed notice program includes the following components:

1. Online display banner advertising specifically targeted to reach Class members in both the U.S. and its Territories;
2. Keyword search targeting class members in both the U.S. and its Territories;
3. A press release;
4. Social media through Facebook, and Google Display Network ("GDN");
5. An informational website, on which the notices and other important Court documents will be posted and will be optimized for mobile visitors so that information loads quickly on mobile devices. Keywords and natural language search terms will be included in the site's metadata to maximize search engine rankings. Visitors to the Settlement website will also have the ability to download the Settlement Claim Form or submit one electronically;
6. A toll-free information line, which Class members can call 24/7 for more information about the Settlement, including, but not limited to, requesting copies of the Long Form Notice or a Claim Form. (Intrepido-Bowden Decl. ¶¶ 19-35.)

This proposed notice program provides a fair opportunity for Class Members to obtain full disclosure of the conditions of the Settlement and to make an informed decision regarding the Settlement. (*See id.*, Intrepido-Bowden Decl. ¶ 35.)

### IV. CONCLUSION

For the foregoing reasons, the Court preliminarily **APPROVES** Plaintiff's Settlement Agreement, conditionally certifies the proposed class for settlement purposes, and approves Plaintiff's notice plan. The parties may submit a motion for final approval of the class settlement by **Monday, November 21, 2022**.

DATED: June 24, 2022

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE