JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL GIFFORD, MARY LOU MOLINA, RANDY MILAND, and KAREN PERRI, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PETS GLOBAL, INC.,<br><br>Defendant. | Case No.: CV 21-02136-CJC (MRWx)<br><br>ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT [Dkt. 59] AND GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES [Dkt. 60] |

I.   INTRODUCTION

On March 9, 2021, Plaintiffs Paul Gifford, Mary Lou Molina, Randy Miland, and Karen Perri filed this putative consumer class action alleging that Defendant Pets Global, Inc. misrepresented the kind of ingredients used in its Zignature Limited Ingredient pet

food line.[1]  (*See* Dkt. 1 [Class Action Complaint].)  On June 2, 2021, Plaintiffs filed their First Amended Class Action Complaint.  (*See* Dkt. 23 [hereinafter "FAC"].)  In their FAC, Plaintiffs allege claims for breach of express warranty under California law, Minnesota law, and Illinois law, (Count I, II); breach of implied warranty under California Law, Minnesota Law, and Illinois Law (III, IV, V); unjust enrichment (Count VI); violations of California's Consumer Legal Remedies Act (Count VII), California's False Advertising Law (Count VIII), and California's Unfair Competition Law (Count VIV); violations of Minnesota's Uniform Deceptive Trade Practices Act (Count X); and violations of Illinois's Consumer Fraud Act (Count XI).  (*See* FAC ¶¶ 69–184.)

On June 24, 2022, the Court conditionally certified a plaintiff class and preliminarily approved a settlement between the class and Defendant Pets Global, Inc. (*See* Dkt. 58 ["Order"].)  Now before the Court is Plaintiffs' unopposed motion for final approval of the proposed class action settlement, (*see* Dkt. 59-1 [Memorandum of Points and Authority In Support, hereinafter "Mot."]), and unopposed motion for attorneys' fees and expenses, (*see* Dkt. 60-1 [Memorandum In Support, hereinafter "MAF"]).  For the following reasons, Plaintiffs' motion for final approval is **GRANTED**, and Plaintiffs' motion for attorneys' fees and expenses is **GRANTED IN PART** and **DENIED IN PART**.

II. BACKGROUND

A. Factual Allegations

Defendant designs, manufactures, markets, and sells pet food products online and through third-party retailers throughout the United States.  (*See* FAC ¶ 8.)  Plaintiffs are

---

[1] Plaintiff Karen Perri voluntarily dismissed her claims against Defendant on October 12, 2021, and is no longer a named plaintiff in this action.  (Dkt. 42 [Karen Perri's Notice of Voluntary Dismissal].)

individuals who have each purchased Defendant's Zignature Limited Ingredient pet food line because of certain representations Defendant made about the products in this line. (*See id.* ¶¶ 13–28.)

Specifically, Plaintiffs allege that Defendant represents to its consumers that its Zignature Limited Ingredient pet food line is "grain free" and "chicken free." (*Id.* ¶ 53.) Although pet foods vary in the quality of ingredients, formula, manufacturing processes, and inspection quality, dog owners often choose to purchase products that have "limited ingredients"—such as grain-free or chicken-free—at a premium because certain dog breeds have allergies associated with dog foods that contain these ingredients or because the owners believe that certain ingredients help (or hamper) their pets' health, weight, and overall well-being. (*Id.* ¶¶ 40, 50.) Plaintiffs allege that they were harmed because they paid a premium for these products, but the products did not conform to representations on their packaging nor to warranties Defendant made regarding their quality. (*See id.* ¶¶ 13–28.)

B. **Settlement Terms**

After Plaintiffs filed their FAC, the parties participated in an all-day mediation session with the Honorable Wayne Anderson (Ret.) of JAMS Chicago. (*See* Dkt. 47 [Declaration of J. Hunter Bryson in Support of Motion for Preliminary Approval] ¶ 6.) The case did not settle. However, conversations between the parties continued, and Judge Anderson ultimately made a mediator's proposal that both parties accepted. (*See id.*) The parties did not discuss attorneys' fees, costs, or service awards until after they agreed on the material terms and structure of the settlement. (*See id.*) Negotiations continued for an additional six weeks before the proposed settlement was finalized on October 21, 2021. (*See id.* ¶¶ 7, 8.)

The Settlement Agreement and Release (the "Settlement"), which is made pursuant to California law, encompasses all "pet food products manufactured or produced for Pets Global and marketed or labelled as 'grain free' or 'chicken free' or with some similar designation claiming the absence of any grain or chicken, and including without limitation all Zignature products manufactured by Pets Global and those products listed in Plaintiffs' Amended Complaint" (the "Products"). (Dkt. 47-1 [Settlement Agreement and Release, hereinafter "Settlement Agreement"] § I(T).) The nationwide Class is defined as:

> All persons residing in the United States who purchased the Products primarily for personal, family or household purposes, and not for resale, during the Class Period. Excluded from the Settlement Class shall be jurists, mediators, plaintiffs' or defense counsel and their employees, legal representatives, heirs, successors, assigns, or any members of their immediate family; any government entity; Pets Global, any entity in which Pets Global has a controlling interest, any of Pets Global's subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns or any members of their immediate family.

(Settlement Agreement § I(Y).) The Class Period is defined as June 2, 2017 (four years prior to the filing of the FAC) through the Preliminary Approval of the Settlement. (*See id.* § I(L).)

The Settlement has two primary benefits for Class Members. Under the first, Class Members may submit a claim for monetary relief. (*See id.* § IV(B).) There is no cap on the amount dedicated to this benefit. Those with valid claims are eligible to recover up to $10 for each purchase of a Product with proof of purchase, with a $100 cap per household. (*See id.* § IV(B)(2)(a).) Those without proof of purchase may be entitled to recover a maximum of $5 total. (*See id.* § IV(B)(2)(b).) The second benefit provides injunctive relief to the Class. Defendant agrees to revise its product labels and marketing references so that Product labels that make a "chicken free" and "grain free" claim no

longer contain those representations. (*Id.* § IV(A)(1).) However, Defendant will be able to sell all of its product that it has currently manufactured as of the Final Approval Order with these representations. (*See id.* § IV(A)(3).) Defendant also warrants that it will cooperate with Plaintiffs in presenting evidence to the Court regarding the value of the injunctive relief, including, without limitation, the cost to Defendant to comply with the injunctive relief. (*See id.* § IV(A)(4).)

Under the Settlement, Defendant also agrees to audit all of the manufacturing plants of suppliers for a period of 5 years following the Court's Final Approval Order. The audits will be at least once a year, and will include (1) a visual inspection of all manufacturing machines that process, store, or otherwise come into contact with the pet food manufactured within said facility and purchased by Defendant, (2) an audit of the manufacturer's manufacturing process and sourcing records, to confirm the accuracy of the ingredients being used in Defendant's products, and (3) ensuring that all the manufacturing processes used by the manufacturing plant adhere to quality control standards. (*See id.* § IV(D).)

Defendant also agrees that it will not oppose Class Counsel's application to the Court for attorneys' fees, costs, and expenses in an amount not to exceed $875,000. (*See id.* §§ V(A), V(E).) This amount includes all costs and fees incurred by Class Counsel in connection with the action thus far, as well as ongoing and future costs and fees through finalization of the Settlement in this action. (*See id.*) However, the exact amount of fees awarded shall be determined by the Court in its discretion and the determination thereof will not impact the validity or fulfillment of the Settlement Agreement. (*See id.*) Defendant has also agreed to pay service awards not to exceed $5,000 to each class representative. (*See id.* §§ V(C), V(E).)

In exchange for the Settlement consideration, Plaintiffs and each Settlement Class Member, and each of their heirs, spouses, guardians, executors, administrators, representatives, agents, attorneys, insurers, partners, successors, predecessors-in-interest, and assigns, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Class Released Claims against Defendant as defined in the Settlement Agreement. (*See id.* § VI(A).) The released claims are (1) those that were asserted or could have been asserted in this action, and (2) those that arise out of or are related in any way to any or all of the acts, omissions, facts, matters, transactions, occurrences, or events that were or could have been directly or indirectly alleged or referred to in this action. (*See id.*, Ex. A.)

## III. DISCUSSION

### A. Final Approval

#### 1. Class Certification

Before granting final approval of a class action settlement agreement, the Court must first determine whether the proposed class can be certified. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) (indicating that a district court must apply "undiluted, even heightened, attention [to class certification] in the settlement context" in order to protect absentees). In the present case, the Court has already certified the Settlement Class. (*See* Order at 7–8.)

//
//
//
//

## 2. Fairness of Settlement

Approval of class action settlements is governed by Federal Rule of Civil Procedure 23(e). A district court may approve class action settlements only when they are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Courts must consider whether "(A) the class representatives and class counsel have adequately represented the class[,] (B) the proposal was negotiated at arm's length[,] (C) the relief provided for the class is adequate[,] and (D) the proposal treats class members equitably relative to each other." *Id.* 23(e)(2)(A–D). In determining whether the class's relief is "adequate," courts must analyze "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." *Id.* 23(e)(2)(C).[2]

When, as in this case, "a settlement agreement is negotiated prior to formal class certification," the settlement "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Courts must be wary of "subtle signs" of collusion such as "(1) when counsel receive a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing' arrangement (i.e., an

---

[2] Before Congress codified these factors in 2018, the Ninth Circuit instructed district courts to apply the following factors in determining whether a settlement agreement was fair, reasonable, and accurate: "[1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019); *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). The Court still considers these factors to the extent that they shed light on the inquiry mandated by Rule 23(e).

arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed [funds] to the defendant." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019).

In its Preliminary Approval Order, the Court found that the factors weighed in favor of approving the Settlement. (*See* Order at 10–18.) Because no pertinent facts have changed, the Court reaffirms and incorporates by reference its analysis of the Rule 23(e)(2) requirements as set forth in its Preliminary Approval Order. (*See id.*) Accordingly, the Court finds the Settlement to be "fair, reasonable, and adequate" pursuant to Federal Rule of Civil Procedure 23(e).

### 3.     Response to Notice

JND Legal Administration ("JND"), the Claims Administrator, carried out a notice program designed to reach 70% of the class members. (*See* Mot. at 16.) Plaintiffs assert that the Notice Program "included a 12–week digital effort with the leading digital network (Google Display Network – 'GDN') and the top social media platform (Facebook). Additional notice efforts, including an internet search campaign and the distribution of a nationwide press release in English and Spanish, extended reach further." (*Id.*) JND also established and maintained a settlement website, a toll-free phone line, and a post office box. (*See id.*)

JND has received 28,186 claim forms requesting recovery from the settlement fund, which amounts to an approximately 3% claims rate. (*See id.* at 11.) JND has only received one objection. (*See id.* at 4.) Of the submitted claims, 1,434 were filed with a proof of purchase, while 26,752 were filed without proof of purchase. (*See id.*) JND is still determining the validity of the proof of purchase claims, but based on the claims

received it asserts that the maximum payout the claimants would receive is $277,450. (*See id.*)

Nine class members requested to be excluded from the class settlement. (*See id.*) The extremely low number of opt outs or objections indicates significant overall support for the Settlement and strongly supports final approval. *See, e.g., In re Lifelock, Inc. Mktg. & Sales Practices Litig.*, 2010 WL 3715138, at *6 (D. Ariz. Aug. 31, 2010) (holding that low number of timely written objections and requests for exclusion supported settlement approval).

Because the Settlement is "fair, reasonable, and adequate" pursuant to Federal Rule of Civil Procedure 23(e) and has received a favorable response from class members, the Court **GRANTS** final approval of the Settlement.

**B.     Attorneys' Fees**

In Plaintiffs' motion for attorneys' fees and expenses, Class Counsel requests an award of attorneys' fees of $814,172. (*See* MAF at 20.) Notwithstanding any agreement between the parties, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 941. In other words, a district court has the authority and the duty to determine the fairness of attorney fees in a class action settlement. *See Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1329 (9th Cir. 1999). The amount of fees awarded rests ultimately in the court's sound discretion. *See Evans v. Jeff D.*, 475 U.S. 717, 736 n.26 (1986), *superseded by statute on other grounds*.

The lodestar method for calculating attorneys' fees requires the Court to multiply the "number of hours reasonably expended by a reasonable hourly rate." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). That figure, which is the lodestar, may then be "adjusted upward or downward to account for several factors including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.*

In their motion for attorneys' fees and expenses, Plaintiffs assert that "Settlement Class Counsel has requested rates of $875 for Daniel K. Bryson and $575 for J. Hunter Bryson." (MAF at 5.) The Court finds these rates are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1994). "To date, Settlement Class Counsel [has] spent 591 hours" working on the case. (MAF at 3–4). Accordingly, "[t]he hours and rates submitted by Settlement Class Counsel yield a lodestar of $405,960." (*Id.* at 6.)

Plaintiffs' requested award of $814,172 represents a lodestar multiplier of approximately 2.0. (*See id.*) In support of the requested multiplier, Plaintiffs argue that "[p]roduct defect class actions are often found to present complex and novel issues that warrant a multiplier." (*Id.* at 8). They also argue that "Settlement Class Counsel's ability to negotiate a favorable settlement despite the vigorous opposition of Defendant's counsel also supports their fee request." (*Id.* at 11.) Plaintiffs further assert that the multiplier is supported by (1) the fact that Class Counsel took the case on contingency and were "precluded from obtaining other cases in order to properly litigate this case," (*id.* at 12–13), (2) the significant benefits they achieved for the class, (*see id.* at 14), (3) the fact that most of the work was done by a senior associate rather than a partner, (*see id.* at 16), (4) the awards granted in similar Ninth Circuit cases, (*see id.* at 17), and (5) the fact that no class members objected to the proposed fee award, (*see id.* at 18).

There is a strong presumption that the lodestar is a reasonable fee. *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). As a result, "a multiplier may be used to adjust the lodestar amount upward or downward only in rare and exceptional cases, supported by both specific evidence on the record and detailed findings . . . that the lodestar amount is unreasonably low or unreasonably high." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (cleaned up). This is not the case here.

Avoiding protracted litigation by reaching a settlement at an early stage is certainly a positive result and justifies an award of reasonable attorneys' fees—but it does not justify an award of exceptionally high attorneys' fees. Class Counsel did not file or oppose any motions before the Court in the course of litigation prior to seeking preliminary approval of the Settlement, they did not face especially complicated factual issues, and they did not litigate any novel issues of law. On this record, the Court does not believe that the requested multiplier is justified and instead awards the lodestar value of $405,960 in attorneys' fees.

### C. Costs and Expenses

In Plaintiffs' motion for attorneys' fees and expenses, Class Counsel requests litigation costs in the amount of $60,828. (*See* MAF at 20.) Attorneys are entitled to reimbursement of reasonable litigation costs. *See Harris v. Marhoefer*, 24 F.3d 16, 19–20 (9th Cir. 1994). Class Counsel is therefore entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Id.*

The Court has analyzed the $60,828 in costs requested and finds that they are reasonable, were necessary to the prosecution of this litigation, were the sort of expenses

normally billed to paying clients, and were made for the benefit of the settlement class. The incurred costs include "consulting expert fees, filing fees, research, mediation, and other necessary expenses." (Dkt. 60-2 [Affidavit of Daniel K. Bryson In Support] ¶ 36.) The Court finds that these costs were reasonably incurred and awards Class Counsel $60,828 in litigation costs and expenses. *See* Fed. R. Civ. P. 23(h); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving reasonable costs in class action settlement).

### D. Incentive Award

Finally, Plaintiffs request $5,000 incentive award payments for the class representatives. (*See* MAF at 20.) Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit. *See Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013). Such awards "are fairly typical in class action cases" and are discretionary. *Rodriguez v. W. Pub. Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). In the Ninth Circuit, a $5,000 incentive award is "presumptively reasonable." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015); *see also Harris v. Vector Marketing Corp.*, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (collecting cases and explaining that in the Ninth Circuit, $5,000 is a presumptively reasonable service award). Plaintiffs assert that a $5,000 award will compensate the class representatives for their work "assisting in the investigation, keeping abreast of the litigation, and meeting and communicating with Settlement Class Counsel on an ongoing basis over the 19 month pendency of this case regarding the progress of the litigation, settlement efforts, and settlement terms." (Mot. at 20.) Accordingly, the Court approves the requested $5,000 incentive award payments for the class representatives.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** final approval of the Settlement. The Court **GRANTS IN PART** and **DENIES IN PART** the request for approval of attorneys' fees, costs, and class representative incentive awards, as follows: Class Counsel's request for attorneys' fees in the amount of $814,172 is **DENIED**; instead, the Court **APPROVES** attorneys' fees for Class Counsel of no more than $405,960. The Court **GRANTS** $60,828 in litigation costs and a $5,000 incentive award for each class representative. Plaintiffs shall submit a proposed judgment in accordance with this order.

DATED: December 13, 2022

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE

CC: FISCAL